**NATIONAL MINING ASSOCIATION, et al., Plaintiffs,**

v.

**Elaine L. CHAO, et al., Defendants.**

**No. CIV. 00–3086(EGS).**

United States District Court, District of Columbia.

Aug. 9, 2001.

Mark E. Solomons, Michael R. Goodstein, Arter & Hadden, LLP, Washington, DC, Attorneys for Plaintiffs.

Sandra Schraibman, Gail Walker, Lisa M. Bornstein, U.S. Department of Justice, Civil Division, Washington, DC, Donald Shire, Rae Ellen James, Michael Denney, U.S. Department of Labor, Office of the Solicitor, Washington, DC, Of Counsel for Defendants.

George Cohen, Jeremiah Collins, Bredhoff & Kaiser, Washington, DC, Grant Crandall, Judith Rivlin, United Mine Workers of America, Fairfax, VA, Thomas E. Johnson, Johnson, Jones, Snelling, Gilbert & Davis, P.C., Chicago, IL, Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, WV, Counsel for Intervenors.

### MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

### INTRODUCTION

Plaintiffs commenced this action for declaratory judgment and injunctive relief and request this Court to enjoin the enforcement of final regulations issued by the defendants on December 20, 2000. The regulations are published at 65 Federal Register 79920–80107 under Title IV of the Federal Coal Mine Health and Safety Act of 1969 as amended, 30 U.S.C. §§ 901–945, also known as the Black Lung Benefits Act("BLBA"). The BLBA provides benefits "to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a).

The subject regulations are organized into four principal parts. The first part, 20 C.F.R. Part 718, sets forth the medical proof necessary to establish entitlement to black lung benefits. The second part, 20 C.F.R. Part 722, prescribes criteria for determining whether a state's workers' compensation program provides "adequate coverage," 30 U.S.C. § 931(b), and therefore provides the exclusive means of black lung recovery for miners in that state. The third part, 20 C.F.R. Part 725, sets forth the procedures for adjudicating claims. And the fourth part, 20 C.F.R. Part 726, establishes guidelines for the

insurance or self-insurance obligations imposed on coal mine operators by the BLBA.

Pending before the Court are plaintiffs' motion for summary judgment and defendants' motion to dismiss or, in the alternative, for summary judgment. Also pending is intervenors' motion for summary judgment, which does not support defendants' motion to dismiss, but does support defendants' defense of the challenged regulations. The defendants and intervenors have also filed motions to strike certain affidavits attached to plaintiffs' motion for summary judgment as outside the administrative record. Plaintiffs have also filed a motion to vacate and remand the proceedings, based on plaintiffs' contention that the current administration does not support the policy choices behind the rules. Finally, the Coal Mining Compensation Rating Bureau of Pennsylvania filed a motion to appear as *amicus curiae*. On June 18, 2001, the Court granted plaintiffs' Motion for Partial Voluntary Dismissal of Claims. Count I paragraph 23(q), Count V paragraph 40(r), and Count VIII paragraph 52(f) of plaintiffs' amended complaint were dismissed without prejudice. Additionally, plaintiffs' did not provide any discussion or only cursory argument in their pleadings regarding several of the rules challenged in their amended complaint. Although plaintiffs' argue that they have not abandoned any claims, those for which they provide only cursory argument are deemed conceded.[1] *See, e.g., Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C.Cir.1997).

Upon consideration of the pending motions, the points and authorities in support of and in opposition thereto, the arguments of counsel, and for the reasons set forth herein, the Court will **DENY** plaintiffs' motion for summary judgment and defendants' motion to dismiss the complaint on jurisdictional grounds. Further, the Court will **GRANT** intervenors' and defendants' motions for summary judgment defending the challenged regulations.

## THE PARTIES

Plaintiffs are the National Mining Association, the national trade association for the U.S. mining industry, the Old Republic Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and American Mining Insurance Company, commercial insurance carriers, the Ohio Valley Coal Company, an underground coal operator, and the American Iron & Steel Institute, a trade association whose members have or had financial interests in coal mines.

Defendants are Elaine L. Chao, Secretary of Labor, and the United States Department of Labor ("DOL"). The Secretary of Labor is authorized by the BLBA to issue regulations governing the administration of the BLBA. The DOL has principal responsibility for the implementation and administration of the BLBA.

Intervenors are the United Mine Workers of America, a labor union, the National Black Lung Association, an advocacy group representing current and retired

---

1. The rules that plaintiffs' challenge in their Amended Complaint for which they offer no argument are: § 718.301, § 725.101(a)(29), § 725.101(a)(32), § 725.202, § 725.407, § 725.410. Plaintiffs also provide cursory argument to support their claims that § 718.201 creates an unlawful burden shifting presumption and denies a full and fair hearing, § 725.101(a)(31) is impermissibly retroactive, § 725.406 violates 33 U.S.C. § 928, § 725.408 violates 33 U.S.C. § 928, § 725.409 violates 33 U.S.C. § 928, §§ 725.411–418 violates 33 U.S.C. § 928, § 725.607 violates 33 U.S.C. § 932, § 725.493 denies a full and fair hearing, § 726.8 denies a full and fair hearing, § 725.2 exceeds the DOL's statutory authority, § 725.103 is impermissibly retroactive, and § 725.409 denies a full and fair hearing.

coal miners, Mike South, a former coal miner, a clinic that provides screening, diagnostic and other services to patients with black lung disease, and several current or prospective claimants for benefits.

## BACKGROUND

### I. Facts Giving Rise to this Litigation

On January 22, 1997, the DOL issued a notice of proposed revisions to the BLBA regulations. 62 Fed.Reg. 3338–3435 (Jan. 22, 1997) (Admin. Record Doc. No. 00001). The DOL allowed interested parties until March 24, 1997 to file comments. That deadline was extended twice. 64 Fed.Reg. 54966 (Oct. 8, 1999) (Admin. Record Doc. No. 00345). The comment period closed on August 21, 1997. At that time, the DOL had received almost 200 comments. The DOL also held two public hearings at which more than 50 people testified; the comments and testimony came mainly from coal mine operators, the National Mining Association, representatives of the insurance and claims-servicing industries, coal miners and their survivors, the National Black Lung Association, the United Mine Workers of America, the American Bar Association, and physicians and attorneys who practice in the field of black lung compensation. *Id.*

On October 8, 1999, after reviewing the comments and seeking guidance from the National Institute for Occupational Safety and Health ("NIOSH")[2] (Admin. Record Doc. Nos. 00327 and 00333), the DOL issued a second notice. 64 Fed.Reg. 54966–55072 (Oct. 8, 1999) (Admin. Record Doc. No. 00345). The second notice revised some of the earlier proposed regulations and included an initial analysis under the Regulatory Flexibility Act, 5 U.S.C. §§ 601 *et seq. See id.* at 55006–09. The

DOL allowed interested parties until December 7, 1999 to file comments. That deadline was extended to January 6, 2000. 64 Fed.Reg. 62997 (Nov. 18, 1999) (Admin. Record Doc. No. 00531). The DOL received 37 comments during the second comment period. *Id.*

On December 20, 2000, after considering the comments and testimony, the advice of NIOSH, and the reports of three expert consultants, the DOL issued final rules and a Final Regulatory Flexibility Analysis. 65 Fed.Reg. 79920–80107 (Dec. 20, 2000) (Admin. Record Doc. No. 01071). On January 19, 2001, the new rules went into effect. *Id.* at 79920.

On December 22, 2000, plaintiffs filed a complaint for declaratory and injunctive relief challenging several of the final rules. On January 26, 2001, plaintiffs filed an amended complaint, along with a motion for preliminary injunction to stay the effective date of the rules. On February 9, 2001, the Court entered a Preliminary Injunction Order with the consent of defendants and plaintiffs, and "without objection" of the intervenors.

### II. Black Lung Disease

Pneumoconiosis is commonly known as "black lung disease." It is "a dreadful and insidious disease which interferes with the respiratory functions of its victims," and "slowly and progressively makes the very act of breathing more and more difficult." *Curse v. Dir., OWCP,* 843 F.2d 456, 457 (11th Cir.1988) (quoting 124 Cong. Rec. S2,333 (daily ed. Feb. 6, 1978) (statement of Sen. Williams)). It "affects a high percentage of American coal workers with severe, and frequently crippling, chronic respiratory impairment" caused by "long-term inhalation of coal dust." *Usery v.*

---

**2.** NIOSH is the federal government entity charged with conducting research into occu-

pationally-related health problems. 29 U.S.C. §§ 651(b)(6) and 671.

*Turner Elkhorn Mining Co.*, 428 U.S. 1, 6, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976). As the disease advances, it may cause physical disability and ultimately "may induce death by cardiac failure, and may contribute to other causes of death." *Id.* at 7, 96 S.Ct. 2882.

### III. Statutory and Regulatory Background

Under the BLBA, the administrative process begins when a miner or his survivor files a claim with the District Director in the DOL's Office of Workers' Compensation Programs ("OWCP"). The District Director investigates the claim, notifies the interested parties, and makes a preliminary determination as to whether the claimant is eligible for benefits and which mine employer should be held responsible. 20 C.F.R. §§ 725.301–725.422. Coal mine operators are primarily responsible for paying these claims. 30 U.S.C. § 932(a). However, if a mine operator responsible for a victim's disability or death cannot be identified or the responsible operator fails to pay the benefits awarded, the claim is paid from the Black Lung Disability Trust Fund ("Trust Fund"), which is financed by an excise tax on coal sales. 30 U.S.C. §§ 932, 934; 26 U.S.C. §§ 4121, 9501(d)(1).[3]

Either party may appeal the decision of the District Director and request a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 725.450–725.480. The ALJ's decision may be appealed by either party to the DOL's Benefits Review Board, 20 C.F.R. § 725.481, and ultimately to the United States Court of Appeals for the circuit in which the injury occurred. 33 U.S.C. § 921(c); 20 C.F.R. § 725.482.

### JURISDICTION

■ The BLBA does not designate the forum where a judicial challenge to the facial validity of regulations promulgated under it may be resolved. Plaintiffs and intervenors argue that jurisdiction to resolve such challenges vests in this Court under 28 U.S.C. § 1331.

Defendants contend that facial challenges to the rules are inextricably intertwined with benefits determinations. Thus, defendants maintain that this Court does not have jurisdiction over plaintiffs' claims,[4] because exclusive jurisdiction to review black lung benefits determinations vests with the federal courts of appeals. In support of this argument, defendants rely primarily on the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994). Defendants argue that *Thunder Basin* holds that when it is discernible from a statute's language, structure, purpose, and legislative history that the review scheme prescribed by that statute was intended by Congress to be exclusive, that scheme must not be circumvented. *Id.* at 207–16, 114 S.Ct. 771.

In *Thunder Basin*, the Supreme Court held that the statutory review scheme of the Federal Mine Safety and Health Amendments Act of 1977 (the Mine Act), 30 U.S.C. §§ 801 *et seq*, revealed a con-

---

**3.** The claims process is generally governed by cross-referenced sections of the Longshore and Harbor Workers' Compensation Act ("Longshore Act"), 33 U.S.C. §§ 919(a)-(c), 921(a)-(c), except to the extent these provisions are overridden by superseding sections of the BLBA or by regulations promulgated by the DOL. *See* 30 U.S.C. § 932(a). Claims filed after December 31, 1973 (known as

"Part C" claims) are processed pursuant to the benefits program administered by the Secretary of Labor. 30 U.S.C. §§ 931–62.

**4.** Defendants do not dispute that this Court has jurisdiction over plaintiffs' challenge to part 726 regulations and plaintiffs' Regulatory Flexibility Act challenge.

gressional intent to preclude district courts from exercising subject-matter jurisdiction over pre-enforcement challenges to the Act. 510 U.S. at 202, 114 S.Ct. 771. *Thunder Basin* involved a challenge to an instruction issued by the Mine Safety and Health Administration to a mine operator. Rather than seek administrative review, the mine operator sought a pre-enforcement injunction directly from the district court. *Id.* at 204–05, 114 S.Ct. 771.

The Mine Act provides for review of all violations of its regulations by an ALJ, *id.* at 209, 114 S.Ct. 771 followed by review by the Federal Mine Safety and Health Review Commission, and then review by a court of appeals. *Id.* at 204, 207–08, 114 S.Ct. 771. The Mine Act's review scheme applies to violations of "any mandatory health or safety standard, rule, order, or regulation." 510 U.S. at 207, 114 S.Ct. 771 (citation omitted).

The Supreme Court held that although the Mine Act is silent on the question of pre-enforcement claims, "the Mine Act's comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a 'fairly discernible' intent [by Congress] to preclude district court review" over ordinary challenges under the Act. *Id.* at 216, 114 S.Ct. 771 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2457, 81 L.Ed.2d 270 (1984)). However, *Thunder Basin* did *not* involve a

challenge to rulemaking under the Administrative Procedure Act ("APA").

Defendants argue that in view of the similarities between the review schemes of the BLBA and the Mine Act, *Thunder Basin* precludes this Court's jurisdiction over all of plaintiffs' claims. Defendants are correct that jurisdiction to review black lung benefits determinations vests with the courts of appeals.[5] That does not necessarily mean, however, that this Court lacks jurisdiction over facial challenges to rules promulgated under the BLBA and the APA. The district court has expressly found, albeit prior to *Thunder Basin*, that it possessed jurisdiction to review an earlier challenge to black lung regulations under the BLBA. *See Nat'l Indep. Coal Operator's Ass'n v. Brennan*, 372 F.Supp. 16 (D.D.C.1974), *aff'd*, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974).

Moreover, D.C. Circuit precedent, following *Thunder Basin*, interpreting the OSH Act and its regulatory scheme is controlling. The OSH Act provides, that "any person adversely affected by a *standard* issued under this section may ... file a petition challenging the validity of such *standard* with the United States courts of appeals." (emphasis added). 29 U.S.C. § 655(f). In *Workplace Health & Safety Council v. Reich*, 56 F.3d 1465 (D.C.Cir. 1995), which involved a challenge to DOL rulemaking under the OSH Act, the Circuit held that since the challenged rule was a regulation, rather than a standard, the district court had subject-matter jurisdic-

---

**5.** The Third Circuit has concluded that "the proper method for contesting the Secretary of Labor's interpretation of [the BLBA] is to exhaust the administrative remedies provided under the statute and then to seek review, if desired, in the court of appeals, rather than to seek an injunction against the Secretary in district court." *Compensation Dep't of District Five v. Marshall*, 667 F.2d 336, 340 (3rd Cir.1981). Similarly, the Sixth Circuit found

that the BLBA statutory scheme of review was exclusive and that the plaintiffs in that case were not entitled to invoke district court jurisdiction because they had failed to show that the remedies available under that scheme were inadequate. *Louisville & Nashville Railroad Co. v. Donovan*, 713 F.2d 1243, 1246–48 (6th Cir.1983). However, neither of these cases involved challenges to rules promulgated by the DOL under the APA.

tion. "[A] party seeking to challenge a standard ... may petition a court of appeals, but a party seeking to challenge a regulation must seek review in the District Court." *Id.* 1467. In reaching this conclusion, the Circuit noted that "[a]bsent some express statutory directive to the contrary, persons seeking review of agency action first go to district court [under APA § 703] rather than to a court of appeals." *Id.* (quoting *Int'l Brotherhood of Teamsters v. Pena,* 17 F.3d 1478, 1481 (D.C.Cir. 1994)).[6] The D.C. Circuit recently reaffirmed the principle of law that the APA provides a default standard of review where a statute does not otherwise provide a standard. *See Al–Fayed v. Central Intelligence Agency,* 254 F.3d 300, 2001 WL 788094 (July 13, 2001)(citing *Workplace Health,* 56 F.3d at 1467).

The BLBA provides an explicit scheme of judicial review only for "orders" without mentioning the term "rule" or "regulation." 33 U.S.C. § 921. Although neither the BLBA nor the Longshore Act contain definitions of the terms "rule" or "order," the APA provides concise definitions of each: "Order" is defined as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter *other than rule making* but including licensing." APA § 551(6) (emphasis added); "Rule" is defined as "the whole or a part of an agency statement of general or particular effect designed to implement, interpret, or describe law or policy ..." APA § 551(4). The APA makes a sharp distinction between these two terms.

Since the jurisdictional scheme of the BLBA pertains to compensation orders, rather than rules, and contains no express statutory directive depriving district courts of jurisdiction to review agency rulemaking under the APA, this Court concludes that jurisdiction properly vests in the District Court to consider plaintiffs' challenges to the new black lung regulations.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings and evidence 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed.R.Civ.P. 56(c). *See Beverly Enter., Inc. v. Herman,* 119 F.Supp.2d 1, 3–4 (D.D.C.2000).

Dismissal for failure to state a claim is appropriate when it is established "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The Court is bound by a highly deferential standard when reviewing an agency's action under the APA. The Court shall "not [ ] substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Rather, the Court must evaluate whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.See also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). An agency's action

---

**6.** The Court rejects defendants' argument to follow *Northeast Erectors Ass'n v. Sec'y of Labor,* 62 F.3d 37, 39–40 (1st Cir.1995) where the First Circuit undertook a *Thunder Basin* analysis to find district courts lacked jurisdiction over association's estoppel-based preen-forcement challenge to enforcement of regulation. *See also Sturm Ruger & Co., Inc. v. Herman,* 131 F.Supp.2d 211, 219 n. 4 (D.D.C.2001)(same)(rejecting the rationale of *Workplace Health* as inapplicable to the precise issue for resolution before that Court.)

must be upheld if the agency's reasons and policy choices "conform to 'certain minimal standards of rationality.'" *Small Refiner Lead Phase–Down Task Force v. EPA,* 705 F.2d 506, 521 (D.C.Cir.1983) (citation omitted). When the evidence can reasonably be interpreted to support the agency's action, the Court must uphold that action, "despite the fact that the same evidence is susceptible of another interpretation." *Public Citizen v. Tyson,* 796 F.2d 1479, 1495 (D.C.Cir.1986). Generally, plaintiffs bear a heavy burden of demonstrating the invalidity of agency regulations. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir. 1976) (en banc).

The Court must afford an agency even greater deference when the agency's decision rests on an evaluation of complex scientific data within the agency's technical expertise. In this circumstance, a reviewing court "must generally be at its most deferential." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983). *See also Troy Corp. v. Browner,* 120 F.3d 277, 283 (D.C.Cir.1997). "An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted 'to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.'" *Downer v. United States,* 97 F.3d 999, 1002 (8th Cir. 1996) (quoting *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989)). Where an agency's decision turns on issues requiring the exercise of technical or scientific judgment, "it is not for the judicial branch to undertake comparative evaluations of conflicting scientific evidence," *Natural Res. Def. Council v. EPA,* 824 F.2d 1211, 1216 (D.C.Cir.1987). The Court's role is simply to exercise its "nar-

rowly defined duty of holding agencies to certain minimal standards of rationality." *Ethyl Corp.,* 541 F.2d at 36.

■ An agency's interpretation of a statute it is charged with implementing is entitled to deference so long as its interpretation is reasonable and not precluded by an unambiguous statutory command to the contrary. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). *See also Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000); *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 19, 120 S.Ct. 1084, 1097, 146 L.Ed.2d 1 (2000). *See generally, Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) ("[j]udicial deference to reasonable interpretations by an agency of a statute that it administers" is a "dominant, well-settled principle of federal law").

■ It is not difficult for an agency to establish that its statutory construction "reflects a reasonable interpretation of the law." *Holly Farms Corp. v. NLRB,* 517 U.S. 392, 409, 116 S.Ct. 1396, 1406, 134 L.Ed.2d 593 (1996). The Court must uphold an agency's interpretation, even if that interpretation is not the only one the agency permissibly could have adopted. *See Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 n. 11). The agency's construction need not be "the best," *United States v. Haggar Apparel Co.,* 526 U.S. 380, 394, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) (quoting *Atlantic Mut. Ins. Co. v. Comm'r of Internal Revenue,* 523 U.S. 382, 389, 118 S.Ct. 1413, 140 L.Ed.2d 542 (1998)), nor "the most natural" interpretation of the statute. *Pauley v. BethEnergy*

*Mines, Inc.*, 501 U.S. 680, 702, 111 S.Ct. 2524, 2537, 115 L.Ed.2d 604 (1991). However, the agency's interpretation must not be "flatly contradicted" by the plain language of the statute. *IRS v. Fed. Labor Relations Auth.*, 494 U.S. 922, 928, 110 S.Ct. 1623, 108 L.Ed.2d 914 (1990).

## THE CHALLENGED REGULATIONS

*20 C.F.R. § 718.104:* This rule requires an ALJ to consider the nature and duration of the relationship between the treating physician and the miner when evaluating a treating physician's report. After considering the credibility of the physician's opinion in light of its reasoning, documentation, other relevant evidence, and the record as a whole, an ALJ may give the treating physician's opinion controlling weight.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 919(d), constitutes illegal burden-shifting, is arbitrary and capricious, treats parties unequally, and violates their due process rights.

*20 C.F.R. § 718.201:* This rule redefines pneumoconiosis to include both clinical and legal pneumoconiosis. "Legal" pneumoconiosis includes any chronic lung disease or impairment "arising out of coal mine employment." This section also recognizes that pneumoconiosis is a "latent and progressive disease" that may only become detectable after cessation of exposure to coal dust.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 902, creates an illegal burden-shifting presumption, denies plaintiffs a "Full and Fair Hearing," is arbitrary and capricious, treats parties unequally, was promulgated in violation of 5 U.S.C. §§ 553, 601–12, and violates their due process rights.

*20 C.F.R. § 718.202:* This rule defines the standards used for determining the existence of pneumoconiosis, which include a diagnostic chest x-ray. Even with a negative x-ray, however, a determination that pneumoconiosis exists may be made if the physician's diagnosis of the disease is supported by objective medical evidence and reasoned medical opinion.

Plaintiffs claim that this section is arbitrary and capricious.

*20 C.F.R. § 718.204:* This rule defines causation for total disability due to pneumoconiosis. It establishes that in determining whether a miner is totally disabled due to pneumoconiosis, any non-pulmonary or non-respiratory condition or disease that caused an independent disability shall not be considered.

Plaintiffs claim that this section is impermissibly retroactive, violates the BLBA 30 U.S.C. §§ 902, 923, was promulgated in violation of 5 U.S.C. §§ 553, 601–12, denies them a "Full and Fair Hearing," is arbitrary and capricious, treats parties unequally, and violates their due process rights.

*20 C.F.R. § 718.205(c)(5):* This rule provides that for claims filed after January 1, 1982, pneumoconiosis constitutes a "substantially contributing cause" of death, if it hastened the death of the miner.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 919(d), the BLBA 30 U.S.C. § 901, was promulgated in violation of 5 U.S.C. §§ 553, 601–12, creates an illegal burden-shifting presumption, is arbitrary and capricious, treats parties unequally, and violates their due process rights.

*20 C.F.R. § 718.205(d):* This rule requires that claims filed before January 1, 1982, shall be considered on an expedited basis. It also provides that claimants bear

the initial burden to develop medical evidence to establish death by pneumoconiosis, and will prevail unless the weight of evidence establishes that the miner's death was not due to pneumoconiosis.

Plaintiffs claim that this subsection is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 919(d), the BLBA 30 U.S.C. § 901, was promulgated in violation of 5 U.S.C. §§ 553, 601–12, creates an illegal burden-shifting presumption, is arbitrary and capricious, treats parties unequally, and violates their due process rights.

*20 C.F.R. § 718.301:* This rule provides that a miner's length of employment can be presumed if the miner worked in one or more mines for the number of years required. The length of coal mine work-history must be computed pursuant to 20 C.F.R. § 725.101(a)(32).

Plaintiffs claim that this section is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 718.304:* This rule creates a presumption of total disability or death due to pneumoconiosis when the disease is demonstrated by x-ray, meets international classification standards, or is diagnosed by biopsy upon finding "massive lesions" in the lungs, or by other reasonable means.

Plaintiffs claim that this section is arbitrary and capricious.

*20 C.F.R. § 725.2(c):* This rule provides that 20 C.F.R. § 725 applies to all claims paid or filed on or after January 19, 2001, and to all claims pending on that date with the exception of a number of listed sections. This rule defines a pending claim as any claim not finally denied more than one year prior to January 19, 2001.

Plaintiffs claim that this section is impermissibly retroactive, exceeds the DOL's scope of authority, and violates their due process rights.

*20 C.F.R. § 725.4(a):* This rule applies 20 C.F.R. § 718 to claims filed before March 31, 1980. All claims filed prior to April 1, 1980 fall under 20 C.F.R. § 727(c).

Plaintiffs claim that this section is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 725.101(a)(6):* This rule expands the definition of "benefits" from those payable under § 514 or Title IV, Part C, to include "any expenses related to medical examination and testing" authorized by the designated director.

Plaintiffs claim that this section is impermissibly retroactive, violates their due process rights, and violates the Longshore Act, 33 U.S.C. § 928.

*20 C.F.R. § 725.101(a)(29):* This rule defines "total" and "partial" disability as provided in 20 C.F.R. § 718.

Plaintiffs claim that this section is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 725.101(a)(31):* This rule defines "workers' compensation law" as any law providing for payment to an employee from an employer for an occupational disability. Payments funded wholly from the general revenue are exempted from the definition of workers' compensation payments under this section.

Plaintiffs claim that this section is impermissibly retroactive, violates their due process rights, and violates the BLBA, 30 U.S.C. § 932.

*20 C.F.R. § 725.101(a)(32):* This rule provides that a "year" is a period of 365 or 366 days, or "partial periods totaling one year during which a miner worked in or around a coal mine for at least 125 working days."

Plaintiffs claim that this subsection is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 725.103:* This rule provides that any party raising an allegation bears the burden of proving facts in support of it, except as otherwise provided in this chapter.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 919(d), and violates their due process rights.

*20 C.F.R. § 725.202(b):* This rule creates a presumption that coal mine construction and transportation workers were exposed to coal dust during all periods of employment in or around a coal mine or a preparation facility. The presumption can be rebutted by evidence showing the claimant was not exposed to coal mine dust, or did not work regularly in or around a mine or preparation facility.

Plaintiffs claim that this section is impermissibly retroactive, arbitrary and capricious, and violates their due process rights.

*20 C.F.R. § 725.204:* This rule describes the criteria for determining if a claimant qualifies for augmented benefits as a miner's spouse. The new rule deleted a provision in the previous regulation, precluding augmentation for more than one spouse at the same time.

Plaintiffs claim that this section is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 725.209:* This rule provides the criteria for determining if a miner's child qualifies for augmentation of benefits. A child is eligible if: (1) unmarried and less than eighteen years of age, (2) eighteen or older and a full-time student, or (3) eighteen or older with a disability.

Plaintiffs claim that this section is impermissibly retroactive and violates their due process rights.

*20 C.F.R. § 725.212(b):* This rule describes the conditions under which a surviving or divorced spouse may be eligible for benefits and that concurrent recovery by more than one qualified spouse is no longer precluded under this section.

Plaintiffs claim that this subsection is impermissibly retroactive, exceeds the scope of the DOL's authority, and violates their due process rights.

*20 C.F.R. § 725.213(c):* This rule limits the duration of a spouse or surviving spouse's entitlement to benefits. The newly added subsection provides that spouses may qualify for reentitlement after termination of benefits, if their claims meet the requirements under 20 C.F.R. § 725.212.

Plaintiffs claim that this section is impermissibly retroactive, exceeds the scope of the DOL's authority, and violates their due process rights.

*20 C.F.R. § 725.214(d):* This rule provides the criteria for determining when a claimant is a surviving spouse. A surviving spouse is anyone who went through a marriage ceremony with a miner, even if that ceremony is invalid due to a legal impediment, so long as the parties did not know it was invalid, and were living together at the time of the miner's death. Recovery under this subsection is no longer precluded if another claimant qualifies as a spouse under a different subsection.

Plaintiffs claim that this section is impermissibly retroactive, exceeds the scope of the DOL's authority, and violates their due process rights.

*20 C.F.R. § 725.219(c)(d):* This rule describes the criteria for determining the duration of entitlement to benefits for a miner's child. Subsection (c) provides that a child whose benefits terminated at age

eighteen or later may become reentitled if unmarried, a full-time student, and under twenty-three years of age. Subsection (d) allows a child whose benefits terminated due to a marriage to reapply if the marriage ends, and § 725.218 requirements are met.

Plaintiffs claim that these subsections are impermissibly retroactive, exceed the scope of the DOL's authority, and violate their due process rights.

*20 C.F.R. § 725.309(d):* This rule controls the effect of a prior denial of benefits on a new claim filed more than a year after denial of the previous claim. It provides that such claims must be denied unless the claimant demonstrates a change in a condition of entitlement.

Plaintiffs claim that this subsection is impermissibly retroactive, exceeds the scope of the DOL's authority, creates an illegal burden-shifting presumption, denies them a "Full and Fair Hearing," is arbitrary and capricious, treats parties unequally, violates their due process rights, and was promulgated in violation of 5 U.S.C. §§ 553,.601–12.

*20 C.F.R. § 725.310:* This rule describes the procedure for modification of awards and denials, and provides that a district director may reconsider the terms or denial of an award if there is a change in condition or mistake of fact. This regulation precludes the offset or collection of an overpayment of benefits paid when the modification proceedings result in a finding that a decrease in the award is warranted, provided the claimant is not at fault for the overpayment. However, if an increase in award results from a mistake of fact, it shall be applied retroactively to the date of the original award.

Plaintiffs claim that this section violates the BLBA, 30 U.S.C. § 932, denies them a "Full and Fair Hearing," and violates their due process rights.

*20 C.F.R. § 725.365:* This rule authorizes a lien against benefit awards upon approval of attorney's fees.

Plaintiffs claim that this section is arbitrary and capricious and violates their due process rights.

*20 C.F.R. § 725.366:* This rule provides the procedure for collecting attorney's fees which are permitted when they are "reasonably commensurate" with work performed.

Plaintiffs claim that this section exceeds the scope of the DOL's authority, violates the Longshore Act, 33 U.S.C. § 928, and is arbitrary and capricious.

*20 C.F.R. § 725.367:* This rule requires responsible operators to pay attorney's fees if the operator: (1) did not accept claimant's entitlement to benefits within 30 days of the claim and was found liable; (2) refused to pay medical expense; or (3) sought a decrease and did not prevail. Fees under this section are paid directly to the claimant.

Plaintiffs claim that this section exceeds the scope of the DOL's authority, violates the Longshore Act, 33 U.S.C. § 928, and is arbitrary and capricious.

*20 C.F.R. § 725.405:* This rule describes the procedure for developing medical evidence. It requires the DOL to schedule a complete pulmonary evaluation for the miner after receiving his claim. In the case of a survivor's claim, the DOL must compile all medical evidence that is both necessary and available to evaluate the claim.

Plaintiffs claim that this section treats parties unequally.

*20 C.F.R. § 725.406:* This rule requires that all applicants must be afforded a free, complete pulmonary exam. The miner

must select an evaluating physician from a list of physicians near his residence, provided by the district director. The physician's evaluation must comply with § 718 standards. The rule also provides that a responsible operator must reimburse the fund for all medical exams under this chapter if found liable.

Plaintiffs claim that this section violates 33 U.S.C. §§ 923, 928, the BLBA. 30 U.S.C. § 923, and treats parties unequally.

*20 C.F.R. § 725.407:* This rule describes the procedure for identifying and notifying responsible operators of an applicant's claim for benefits. The district director must investigate whether there are any responsible operators and provide them with a copy of the application and all evidence submitted by the claimant regarding miner's employment history.

Plaintiffs claim that this section denies them a "Full and Fair Hearing."

*20 C.F.R. § 725.408:* This rule requires operators to express an intent to accept or contest their status, once notified of their identification as potentially liable. To contest the allegation, the operator has ninety days to admit or deny five factual assertions. Failure to respond constitutes a waiver of the right to contest liability on any of the five grounds.

Plaintiffs claim that this section, in its entirety, violates 33 U.S.C. §§ 923, 928, violates the BLBA 30 U.S.C. § 923, denies them a "Full and Fair Hearing," treats parties unequally, and violates their due process rights. They also argue that subsection (a)(3), in particular, violates the Longshore Act, 33 U.S.C. § 919(d), as well as the BLBA, creates an illegal burden-shifting presumption, and is arbitrary and capricious.

*20 C.F.R. § 725.409:* This rule provides that when a claim is dismissed as abandoned, the dismissal shall be construed as

a finding that the claimant failed to establish any applicable condition of entitlement. Abandonment may be found if the claimant fails to: (1) submit to a required exam without good cause; (2) submit evidence sufficient to resolve the claim; (3) pursue the claim with reasonable diligence, or (4) attend an informal conference without good cause. Survivors may adjudicate additional claims if finality is waived.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. §§ 923, 928, the BLBA, 30 U.S.C. § 923, denies them a "Full and Fair Hearing," and violates their due process rights.

*20 C.F.R. § 725.410:* This rule instructs the district director to issue a schedule for submission of additional evidence after the collection of medical evidence under § 725.405. The schedule contains the designation of a responsible operator, and allows that operator sixty days to submit evidence identifying other potentially-liable operators.

Plaintiffs claim that this section denies them a "Full and Fair Hearing," and violates their due process rights.

*20 C.F.R. § 725.411–418:* These rules set limitations on the amount and type of medical evidence that may be submitted by the parties, and the procedures for reviewing that evidence. Section 725.411 requires that if there is no responsible operator and the first pulmonary evaluation supports eligibility, then the district director must not admit a second evaluation. Sections 725.412 and 725.414 provide for a waiver by the operator of submission of evidence disputing its status as a responsible operator, if not done in a timely manner. Section 725.415 describes the procedure for reviewing all evidence submitted, and allows for further submissions to identify other potentially liable operators. Section 725.416 authorizes the district di-

rector to conduct an informal conference to aid the voluntary resolution of claims. After such conference, pursuant to § 725.417, the district director must prepare a stipulation of contested and uncontested issues and allow for the submission of additional evidence. The district director's final decision and order must meet the criteria described in § 725.418.

Plaintiffs claim that these sections violate the Longshore Act, 33 U.S.C. §§ 923, 928, the BLBA, 30 U.S.C. § 923, deny them a "Full and Fair Hearing," and violate their due process rights.

*20 C.F.R. § 725.414:* This rule precludes submission by either party of more than two chest x-rays, pulmonary function tests, blood gas tests, and medical reports, and only allows one autopsy and one biopsy report. It also bars submission of more than two medical opinions by either party. Further, defendants may not submit evidence to dispute their status as responsible operators more than ninety days after receipt of notification of that status.

Plaintiffs claim that this section is arbitrary and capricious, and treats the parties unequally.

*20 C.F.R. § 725.456:* This rule bars admission of any documentary evidence describing the liability of operators that was not first submitted to the district director, absent extraordinary circumstances. It also allows the medical evidence limits established in § 725.414 to be breached for good cause. All parties may object to documentary evidence submitted.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 919(d), contains an illegal burden-shifting presumption, and is arbitrary and capricious.

*20 C.F.R. § 725.457:* This rule limits witness testimony, to those who meet the criteria described in § 725.414, in the absence of extraordinary circumstances. It

also requires that a physician testifying to the miner's physical condition must have prepared a report or the party on whose behalf he is testifying must have submitted fewer medical reports than allowed by § 725.414.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 919(d), contains an illegal burden-shifting presumption, and is arbitrary and capricious.

*20 C.F.R. § 725.458:* This rule limits the deposition testimony of a physician to the scope described in § 725.458.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 919(d), contains an illegal burden-shifting presumption, and is arbitrary and capricious.

*20 C.F.R. § 725.459:* This rule shifts responsibility for cross-examination fees of claimant's expert witnesses to the responsible operator or fund, if payment of such fees would deprive the claimant of ordinary and necessary living expenses (per 20 C.F.R. § 404.508). It also provides for payment of nonexpert witness fees and expenses, consistent with those paid in the courts of the United States. Reasonable expert witness fees and expenses may be charged to the responsible operator if the claimant is awarded benefits.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 928.

*20 C.F.R. § 725.465:* This rule permits dismissal of a claim for cause by an ALJ if the claimant fails to attend a hearing without good cause, comply with an order, or if the claim was already adjudicated (except per § 725.4(d)). The new rule prohibits dismissal of a responsible operator absent a motion or written agreement from the District Director.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 919(d),

denies them a "Full and Fair Hearing," and is arbitrary and capricious.

*20 C.F.R. § 725.493:* This rule defines employment to include any relationship where an operator derives a benefit from work performed by a miner who is compensated by the operator in some manner.

Plaintiffs claim that this section exceeds the scope of the DOL's authority, denies them a "Full and Fair Hearing," and is arbitrary and capricious.

*20 C.F.R. § 725.495:* This rule describes the criteria for defining a responsible operator as the miner's most recent employer(s) (per § 725.494). If more than one operator employed the miner "most recently," liability lies first with operator that directed, controlled or supervised the miner. If the most recent employer was self-insured when employing the miner, but can no longer afford to self-insure, the claim must be paid by the Fund.

Plaintiffs claim that this section violates the Longshore Act, 33 U.S.C. § 919(d), creates an illegal burden-shifting presumption, and is arbitrary and capricious.

*20 C.F.R. § 725.502:* This rule provides that benefits are due when an order requiring payment is issued by the district director, notwithstanding any further pending appeals or other litigation. To comply with an order, the responsible operator must pay all benefits due from the effective date of the award plus interest.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. §§ 906, 919(d), violates the BLBA, 30 U.S.C. § 932, creates an illegal burden-shifting presumption, is arbitrary and capricious, and violates their due process rights.

*20 C.F.R. § 725.503:* This rule provides that approved benefits are payable at either the date of onset of total disability by pneumoconiosis or, if that date cannot be determined, the date the claim was filed. Modification claims shall be considered payable from the date of onset if changed conditions were found, or the date of filing if the date of onset is undetermined or the modification is based on a mistake of fact.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. §§ 906, 919(d), violates the BLBA, 30 U.S.C. § 932, is arbitrary and capricious, and violates their due process rights.

*20 C.F.R. § 725.530:* This rule provides that a responsible operator who fails to pay benefits and interest due will be considered to be in default (§ 725.605 will apply). Under the new rule, a claimant who does not receive benefits within ten days of the due date is entitled to a penalty payment of twenty percent of that award.

Plaintiffs claim that this section is arbitrary and capricious.

*20 C.F.R. § 725.607:* This rule provides that the responsible operator must pay additional compensation to a beneficiary if they fail to pay benefits awarded within ten days of the due date. This compensation must be paid even if the fund paid benefits owed by the operator in the interim.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 932, is arbitrary and capricious, and violates their due process rights.

*20 C.F.R. § 725.608:* This rule requires an operator to pay interest to beneficiaries or the fund when they fail to pay benefits due or when retroactive benefits are awarded. The new rule also requires that interest be paid to beneficiaries when additional compensation is required under § 725.607, and when medical services are

rendered or entitlement to such services is determined. Interest shall also accrue on a final award of attorneys fees.

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. § 932, and violates their due process rights.

*20 C.F.R. § 725.701:* This rule requires responsible operators to furnish medical benefits and costs to qualified miners. The new rule adds a requirement that receipt of treatment or supplies for a pulmonary disorder creates a presumption that the disorder was caused by pneumoconiosis. This presumption can be rebutted with credible evidence that the treatment: (1) was not for a pulmonary disorder; (2) was unconnected with the miner's disability; or (3) was unnecessary for effective treatment of the miner's disability. Evidence that the miner does not have or was not totally disabled by pneumoconiosis is not enough to defeat the presumption. The new rule also adds that the treating physician's opinion may be entitled to controlling weight, per § 718.104(d).

Plaintiffs claim that this section is impermissibly retroactive, violates the Longshore Act, 33 U.S.C. §§ 907, 919(d), creates an illegal burden-shifting presumption, denies them a "Full and Fair Hearing," is arbitrary and capricious, was promulgated in violation of 5 U.S.C. §§ 553, 601–12, and violates their due process rights.

*20 C.F.R. § 726.8(d):* This new rule defines the terms "employ" and "employment" to include any relationship where an operator derives a benefit from work performed by a miner who is compensated by · the operator in some manner, echoing § 725.493. It explicitly requires that this relationship be construed as broadly as possible, specifically precluding escape from liability by operators whose financial arrangements funnel payments to employees through other business entities.

Plaintiffs claim that this subsection is impermissibly retroactive, exceeds the scope of the DOL's authority, denies them a "Full and Fair Hearing," is arbitrary and capricious, violates their due process rights, and was promulgated in violation of 5 U.S.C. §§ 553, 601–12.

## DISCUSSION

### I. Count 1: Retroactive Application of the Revised Rules

Plaintiffs claim that §§ 725.2(c) and 725.4(a) apply many of the revised rules retroactively, including generally: (i) the definition of pneumoconiosis, (ii) the criteria for establishing pneumoconiosis as the cause of death, (iii) the codification of the criteria for establishing total disability, (iv) the notice given to parties regarding when benefits are due, and (v) the determination of benefits when there is more than one surviving spouse. Plaintiffs claim that the application of these rules to both pending and newly filed claims is impermissible under *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), because Congress did not authorize the DOL to write retroactive rules, yet the rules announce new substantive legal standards and have a retroactive effect.

Defendants concede that the DOL does not have the authority to promulgate retroactive regulations. *See* 30 U.S.C. § 936. Rather, defendants argue, and the Court is persuaded, that the rules are not retroactive for two reasons. First, some of the rules apply only to claims submitted after their effective date. Second, the rules that do apply to pending claims simply clarify legal principles that were already in effect and do not change the substantive standards of entitlement. The DOL's charac-

terization of their own rules is entitled to "great weight." *McCreary v. Offner*, 1 F.Supp.2d 32, 36 (D.D.C.1998), *aff'd*, 172 F.3d 76 (D.C.Cir.1999) (citation omitted).

■ To determine whether a rule is retroactive, the Court must examine "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). A rule is retroactive if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. 1483. "An administrative rule is retroactive if it takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or consideration already past." *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 177 F.3d 1, 8 (D.C.Cir.1999). However, imposing a new duty or liability does not always constitute an unlawful retroactive approach, *see Regions Hosp. v. Shalala*, 522 U.S. 448, 456, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998), nor is such an approach unlawful just because it upsets or disappoints expectations. *See Usery*, 428 U.S. at 16, 96 S.Ct. 2882 (1976)(citing *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947)). When rules simply clarify legal principles that were in effect when complained-of conduct occurred, their application is not impermissibly retroactive. *See Regions Hosp.*, 522 U.S. at 456, 118 S.Ct. 909; *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 744 n. 3, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (regulations that clarify prior law may apply retrospectively).

■ Plaintiffs claim that revised § 725.309 erects a scheme for eliminating finality in the adjudication of black lung claims under the BLBA. Section § 725.309 provides that a subsequent claim for black lung benefits must be denied unless the claimant can establish that a legally significant condition of entitlement (such as the health status of the miner) has changed since a previous claim was adjudicated. § 725.309(d). Plaintiffs argue that this rule imposes liability in violation of ordinary principles of res judicata and upsets the reasonable expectations of finality embodied in the BLBA and reflected in insurance agreements.

Section § 725.309 applies only to claims submitted *after* the effective date of the regulations, and the claimant must establish that a legally significant condition of entitlement has changed since a previous claim was adjudicated. While the subsequent claim looks to past events (such as exposure to coal mine dust) for its adjudication, that does not make the subsequent claim any more retroactive than the initial claim. Further, the revised § 725.309 differs little from the prior rule, 20 C.F.R. § 725.309 (2000), other than to explain what constitutes a "material change in condition." The Court finds that this rule is not impermissibly retroactive.

■ Plaintiffs claim that § 718.104(d), the "treating physician" rule, is impermissibly retroactive. In the Court's view, this rule is not impermissibly retroactive because it applies only to medical opinions developed after the effective date of the rule. § 718.101(b).

■ Plaintiffs claim that the definition of "pneumoconiosis" in § 718.201(a)(2) is impermissibly retroactive. The BLBA defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The former

rule repeated the statutory definition and added that it included, but was not limited to, seven enumerated diseases which the medical community classifies as "pneumoconiosis." 20 C.F.R. § 718.201 (2000). The regulatory definition of pneumoconiosis always included (a) certain specific diseases labeled by the medical community as being "pneumoconiosis," *id.*, and (b) all other kinds of "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id. See* 65 Fed.Reg. at 79937–38. The new rule does not substantively change that definition. All the new rule does is attach the label "clinical pneumoconiosis" to those diseases identified in medical nomenclature as pneumoconiosis, § 718.201(a)(1), and "legal pneumoconiosis" to any "chronic lung disease or impairment and its sequelae arising out of coal mine employment," including but not limited to, "any chronic restrictive or obstructive pulmonary disease." § 718.201(a)(2). These revisions do not change the legal landscape in any meaningful way.

Similarly, § 718.201(c), recognizing that pneumoconiosis may be "latent and progressive," adds nothing new to the legal landscape. The ailments that fall within the ambit of "*any* chronic dust disease," 30 U.S.C. § 902(b) (emphasis added), and "*a* chronic dust disease," § 718.201 (emphasis added), are broad enough to include any chronic dust disease that is "latent and progressive." § 718.201(c). The DOL, the Supreme Court, and the various courts of appeals have all previously recognized that pneumoconiosis is a latent and progressive disease. *See* 65 Fed.Reg. 79971–72; *Turner Elkhorn Mining Co.*, 428 U.S. at 7, 96 S.Ct. 2882; *Mullins Coal Co.*, 484 U.S. at 151, 108 S.Ct. 427; *E. Associated Coal Corp. v. Dir., OWCP*, 220 F.3d 250, 258–59 (4th Cir.2000); *Lovilia Coal Co. v. Harvey*, 109 F.3d 445, 450–51 (8th Cir.1997); *La-*

*belle Processing Co. v. Swarrow*, 72 F.3d 308, 314–15 (3d Cir.1995). The codification of this legally established fact announces nothing new.

The remaining rules plaintiffs challenge on retroactivity grounds can also be permissibly applied to pending claims. Section 725.209, setting forth when a claimant may receive increased benefits for having a dependent child, is the same as the previous rule in 20 C.F.R. § 725.209 (2000). *See* 65 Fed.Reg. at 79963. Similarly, a mine operator's liability under the new "medical benefits" rule in § 725.701 is substantively the same as it was previously in 20 C.F.R. § 725.701(b) (2000). The new rule simply provides that when a miner establishes total disability, due to pneumoconiosis, and receives medical services for a pulmonary disorder, there is a rebuttable presumption that the disorder was caused or aggravated by the pneumoconiosis. § 725.701(e). This statement codifies the DOL's long standing policy. *See Coal Mine (BLBA) Proc. Manual*, Ch. 3–301, ¶ 7a; Ch. 3—500, ¶ 8a (Feb.1980). *See also Gulf & W. Indus. v. Ling*, 176 F.3d at 233–34; *Gen. Trucking Corp. v. Salyers*, 175 F.3d at 324; *Doris Coal Co. v. Dir., OWCP*, 938 F.2d at 496–97.

Section 718.204(a), the "total disability" rule, which provides that only impairments which affect the miner's ability to breathe are relevant to the disability issue codifies the existing state of the law. 65 Fed.Reg. 79947; 64 Fed.Reg. at 54979; 62 Fed.Reg. at 3345. *See, e.g., Beatty v. Danri Corp. & Triangle Enter.*, 49 F.3d 993, 1001–02 (3d Cir.1995); *Jewell Smokeless Coal Corp. v. Street*, 42 F.3d 241, 244 (4th Cir.1994); *Lollar v. Ala. By-Prods. Corp.*, 893 F.2d 1258, 1262–63 (11th Cir.1990); *Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1480 (10th Cir.1989); *Adams v. Dir., OWCP*, 886 F.2d 818, 820 (6th Cir.1989). The

exclusion of non-respiratory and non-pulmonary impairments is consistent with the DOL's interpretation of the prior regulation. *See* 65 Fed.Reg. at 79947; 64 Fed. Reg. at 54979; 62 Fed.Reg. at 3344–45. *See also Cross Mountain Coal Inc. v. Ward,* 93 F.3d 211, 217 (6th Cir.1996); *Youghiogheny & Ohio Coal Co. v. McAngues,* 996 F.2d 130, 134–35 (6th Cir.1993), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); *Twin Pines Coal Co. v. Dep't of Labor,* 854 F.2d 1212, 1215 (10th Cir.1988); *Peabody Coal Co. v. Dir., OWCP,* 778 F.2d 358, 363 (7th Cir.1985). *But see Peabody Coal Co. v. Vigna,* 22 F.3d 1388, 1394 (7th Cir.1994). The Court finds that these revisions do not change the legal landscape in any significant way.

The only change to § 718.205, the "death due to pneumoconiosis" rule, is an explanation that pneumoconiosis should be deemed to be a "substantially contributing cause" where it "hastened" the miner's death. § 718.205(c)(5). This mirror's the DOL's previous understanding of the term. *See* 65 Fed.Reg. at 79949–50; 64 Fed.Reg. at 54980–82; 62 Fed.Reg. at 3345–48. *See also Bradberry v. Dir., OWCP,* 117 F.3d 1361, 1365–66 (11th Cir.1997); *N. Coal Co. v. Dir., OWCP,* 100 F.3d 871, 874 (10th Cir.1996); *Brown v. Rock Creek Mining Co.,* 996 F.2d 812, 816 (6th Cir.1993); *Peabody Coal Co. v. Dir., OWCP,* 972 F.2d 178, 183 (7th Cir.1992); *Shuff v. Cedar Coal Co.,* 967 F.2d 977, 980 (4th Cir.1992); *Lukosevicz v. Dir., OWCP,* 888 F.2d 1001, 1006 (3d Cir.1989).

Section 725.101 defines the term "benefits" as including "all money or other benefits paid or payable" on account of "disability or death due to pneumoconiosis," by including "any expenses related to the medical examination and testing authorized by the District Director pursuant to § 725.406." § 725.101(a)(6). Section 725.406 implements the BLBA's require-ment that each claimant be provided an opportunity to establish his entitlement by means of a pulmonary evaluation. 30 U.S.C. § 923(b). The prior version of the rule provided that the Trust Fund "shall be reimbursed for such payments by an operator, if any, found liable for the payment of benefits to the claimant," § 725.406(c) (2000). The new rule simply makes §§ 725.101 and 725.406(c) consistent. *See* 64 Fed.Reg. at 54982. This is not a substantive change.

Section 725.502 clarifies the dates on which benefits become due and adjudicatory orders become effective. It does not alter the mine operator's legal obligation to pay benefits or change the amounts due. Section 725.503 provides that approved benefits are payable at either the date of onset of total disability by pneumoconiosis or, if that date cannot be determined, the date the claim was filed. In plaintiffs brief they acknowledge that this is essentially the same rule that has been in effect since 1978. *See* Plaintiffs' Brief at 13. Section 725.502, in conjunction with § 725.503, does not create an impermissible retroactive effect.

Section 725.530 provides that a responsible operator is in default if he fails to pay benefits that are due and that a claimant who does not receive any benefits within ten days of the date they become due is entitled to additional compensation equal to 20 percent of the benefits. § 725.530(a) (incorporating § 725.607). This is not impermissibly retroactive.

Section 725.607 provides generally for the payment of additional compensation in an amount equal to 20 percent of any benefits that are not paid by a responsible operator within ten days after they become due. The revised rule is substantively the same as the prior regulation. 20 C.F.R. § 725.607 (2000).

Section 725.608 provides generally for the payment of simple annual interest when a responsible operator fails to pay benefits, medical benefits, additional compensation, or attorney's fees as required. This rule simply clarifies the obligations and rights of parties with respect to the payment of interest, but does not increase the amount of interest payable in any claim.

The insurance-related provision in § 726.8(d) does not impose any monetary liability on coal mine operators, retroactively or otherwise. It only ensures that insurance companies remain liable for amounts that are co-extensive with the liability of the mine operators whom they insure and encourages operators to make sure that their employees are all covered by insurance as required by law.

Section 718.104 codifies judicial precedent recognizing that an ongoing relationship between a miner and his physician may justify giving weight to that opinion. 62 Fed.Reg. 3342, and cases cited. The Court finds that the codification of this evidentiary standard does not substantively change the burden on the parties.

Sections 725.204, 725.214, 725.212, 725.213, 725.219 were promulgated by the DOL to bring erroneous interpretations in prior rules in conformity with the BLBA.[7] Sections 725.204 and 725.214 recognize that a "deemed" spouse of a living and deceased miner is eligible for black lung benefits regardless of any compensation paid to actual spouses. These revisions bring the regulations into conformity with changes made by Congress in 1990 to the "dependent wife" provision in 42 U.S.C.

§ 416(h)(1), which is incorporated into the BLBA. 30 U.S.C. §§ 902(a)(2) and 902(e). Sections 725.212, 725.213, and 725.219 conform the regulations to statutory amendments regarding the way survivors of a deceased miner may receive benefits or revive a claim for benefits after eligibility has been terminated by a subsequent event. *See Peabody Coal Co. v. Ricker*, 182 F.3d 637, 642 n. 12 (8th Cir.1999). These rules do not change controlling authority, and thus, are not impermissibly retroactive.

Recognizing the deference owed to the DOL in its interpretation of its own rules, the Court finds that none of the rules challenged by plaintiffs are impermissibly retroactive.

## II. Counts II, III, and IV: Violations of the BLBA, Longshore Act and APA

Plaintiffs claim that numerous of the revised regulations violate either one or more of the BLBA, the Longshore Act, or the APA.

### A. *Burden–Shifting Presumptions*

■ Plaintiffs claim that a number of the revised rules improperly shift the burden of persuasion to the employer in violation of section 7(c) of the APA, 5 U.S.C. § 556(d), and *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

Plaintiffs assert that the DOL does not have the authority to deviate from the APA. Plaintiffs point to section 19(d) of the Longshore Act, which is prefaced with the phrase, "Notwithstanding any other provisions of this chapter," the APA applies.

---

**7.** As discussed *infra*, plaintiffs argue that the plain language of the BLBA prohibits the changes made to §§ 725.204, 725.212(b), 725.213(c), 725.214, and 725.219, because Congress did not intend to make later amendments to the Social Security Act ("SSA") applicable to the BLBA. However, this statutory construction argument was not made to the agency which constitutes waiver of the argument in this Court. *See Natural Res. Def. Council*, 25 F.3d at 1073; *Ohio v. EPA*, 997 F.2d 1520, 1528 (D.C.Cir.1993).

33 U.S.C. § 919(d). The Longshore Act is a part of the BLBA through incorporation.

Defendants argue that it is permissible for the DOL to promulgate BLBA regulations that deviate from 5 U.S.C. § 556(d), and that if any of the challenged regulations conflict with the APA, the regulations trump the statute. Defendants are correct.

Section 507 of the Federal Mine Safety Act commands that the procedures in the APA, 5 U.S.C. §§ 551–559, generally do not apply to claims for black lung benefits, "[e]xcept as otherwise provided" by statute. 30 U.S.C. § 956.[8] The BLBA then incorporates certain sections of the Longshore Act. 30 U.S.C. § 932(a). One of the incorporated provisions is § 19(d), which makes the adjudicatory standards in § 5 of the APA (5 U.S.C. § 554) applicable to claims for benefits. 33 U.S.C. § 919(d). Section 5 of the APA incorporates §§ 7 and 8 of the APA (5 U.S.C. §§ 556, 557). 5 U.S.C. § 554(d). Section 7(c) of the APA mandates that, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). However, the enumerated provisions of the Longshore Act (and the cross-referenced provisions in the APA) are applicable to claims for black lung benefits under the BLBA "*except* as otherwise provided for" by statute or "by regulations of the Secretary." 30 U.S.C. § 932(a) (emphasis added).

ALJs are required to assign the burden of proof to the "proponent" of a remedial order, 5 U.S.C. § 556(d), only to the extent that Congress has not assigned the burden of proof in a different manner "by statute," *id.*, or the DOL has not done so "by regu-

lation." 30 U.S.C. § 932(a). The burden of proof mandated by the APA is a default rule that applies in the BLBA context only in the absence of an express statutory or regulatory provision to the contrary.

Plaintiffs' interpretation of *Greenwich Collieries* is not persuasive. In that case, the Supreme Court assumed, *arguendo*, "that the Department has the authority to displace § 7(c)" of the APA "through regulation[s]." *Id.* at 271, 114 S.Ct. 2251. However, the Court concluded that the regulation in question was not intended to displace the APA standards, pursuant to 30 U.S.C. § 932(a), *id.*, and was not consistent with the APA's allocation of the burden of proof on the party seeking relief. *Id.* at 272–81, 114 S.Ct. 2251. The Supreme Court did not find that a rule clearly intended to displace APA standards, which unambiguously shifts the burden of proof, would be invalid. Thus, § 725.103, which provides that any party raising an allegation bears the burden of proof, except as otherwise provided by regulation, is not objectionable.

Regardless of whether the DOL may displace APA standards through regulation, the Court finds that none of the challenged rules do in fact shift the burden of proof to the mine operators. Some of the challenged rules are simply rebuttable evidentiary presumptions enacted to ease the burden on claimants in black lung claims adjudications. The following three challenged rules are permissible evidentiary presumptions that shift the burden of production, rather than the burden of proof: (1) Section 725.701 provides that if an entitled miner receives services and supplies for a pulmonary disorder, it is assumed

---

8. 30 U.S.C. § 956 provides, in pertinent part, that "[e]xcept as otherwise provided in [the Federal Mine Safety Act], the provisions of [5 U.S.C. §§ 551–59 and 701–06] shall not apply to the making of any order, notice, or deci- sion made pursuant to this Act, or to any proceeding for the review thereof." This provision applies to BLBA proceedings because the BLBA is Subchapter IV of the Federal Mine Safety Act.

that the disorder was caused or was aggravated by black lung disease. The mine operator may rebut this presumption with credible evidence. (2) Section 725.503 provides that a successful claimant is entitled to benefits beginning with the month his total disability began. If the evidence does not establish when the disability began, benefits begin with the month the claim was filed. (3) Section 725.408 sets a deadline by which a mine operator must submit evidence if it disagrees with its designation as a company potentially liable for benefits. None of these rules shift the burden of proof to the mine operator.

Other challenged rules do not even shift the burden of production. Section 718.104, the "treating physician" rule, simply identifies the circumstances in which an ALJ may give controlling weight to the medical opinion of a claimant's treating physician. § 718.104(d). Section 725.309(d), the "subsequent claims" rule, simply allows claimants to file a new claim based on changed circumstances. § 725.309(d). Section 718.201 redefines pneumoconiosis to include both clinical and legal pneumoconiosis. None of these rules shifts the burden of proof or the burden of production.

Plaintiffs claim that § 718.205, the "death due to pneumoconiosis" rule, impermissibly shifts the burden of proof. However, the DOL did not receive any comments during the rulemaking proceedings objecting to this provision on grounds that it improperly shifts the burden of proof, and the DOL did not address the issue *sua sponte.* 65 Fed.Reg. at 79949–79951; 64 Fed.Reg. at 54980. Plaintiffs are precluded from raising the issue for the first time here. *Natural Res. Def. Council, Inc. v. EPA,* 25 F.3d at 1073 (holding that party's failure to raise question of statutory/regulatory construction before agency during notice and comment period constitutes a waiver of "their opportunity to press this argument in court"). Nevertheless, the DOL's interpretation of this rule is that it does not change the meaning of the earlier version and that the burden remains with the claimant. The DOL's interpretation of its own regulation is entitled deference so long as it is reasonable. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, ——, 121 S.Ct. 1433, 1436, 149 L.Ed.2d 401 (2001)(citing *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)). In the Court's view, the DOL's interpretation is reasonable.

Section 725.495 authorizes the mine operator, once it has been determined that the operator is the responsible party, to ask the ALJ for a ruling relieving it of its financial liability if it can "bear the burden of proving" that (a) it lacks sufficient financial resources to pay the claim or (b) another potential liable operator employed the injured miner more recently. §§ 725.495(c)(1)–725.495(c)(2). In seeking to be excused from liability, the operator becomes the "proponent" of a remedial order from the ALJ and, therefore, the party to which 5 U.S.C. § 556(d) assigns the burden of proof. This rule is consistent with the APA. *See Greenwich Collieries,* 512 U.S. at 278, 114 S.Ct. 2251, *reconciling and reaffirming NLRB v. Transp. Mgmt. Corp.,* 462 U.S. 393, 404 n. 7, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)(rule requiring proponent "first" to prove its case and "[o]nly then" places "the burden of persuasion" on opposing party does not conflict with the requirements of 5 U.S.C. § 556(d)).

**B.** *Limitations on Evidence*

Plaintiffs claim that the revised rules create arbitrary evidentiary restrictions in violation of the APA. They complain that § 718.204(a) limits an ALJ's authority to consider relevant medical evidence,

§ 718.310(b) limits the volume of evidence a party may adduce to prove a change in condition or mistake of fact, § 725.408(b) limits the amount of evidence an operator may submit directly to an ALJ concerning responsible party status, § 725.414 limits the amount of evidence a party may submit without reference to the APA criteria for admissibility, § 725.415 curtails an ALJ's authority to conduct a proper proceeding, and §§ 725.457(d) and 725.458 limit expert witness testimony.

Plaintiffs contend that an agency "may not provide for the exclusion of relevant evidence not protected by a privilege ... [or] evidence having any tendency to make the existence of any fact that is of consequence ... more probable." *Catholic Med. Ctr. v. NLRB*, 589 F.2d 1166, 1170 (2d Cir.1978). However, the revised rules will not result in the arbitrary exclusion of relevant, material evidence. Section 725.456(b)(1) allows additional evidence to be admitted by an ALJ for "good cause." § 725.456(b)(1). Thus, the ALJ may admit all relevant, material evidence.

The DOL is authorized by Congress: (1) to provide "for the exclusion of irrelevant, immaterial, or unduly repetitive evidence" as "a matter of policy," 5 U.S.C. § 556(d); (2) to "provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits," 30 U.S.C. § 923(b) (incorporating 42 U.S.C. § 405(a)); and (3) to put these restrictions into effect by regulation. 30 U.S.C. § 936. *See also* 62 Fed.Reg. 3357–58. The DOL is clearly authorized to promulgate rules limiting the amount of evidence presented at black lung hearings. *See Tolliver v. P.G. & H., Inc.*, 1999 WL 30896, 172 F.3d 864 (4th Cir.1999) (per curiam); *Soloe v. Dir., OWCP*, 1989 WL 20563, 869 F.2d 1493 (6th Cir.1989).

Plaintiffs also challenge § 725.465, which provides that an ALJ "may, at the request of any party, or on his or her own motion, dismiss a claim" for certain enumerated reasons. § 725.465(a). Under § 725.465(b), a party found not to be a proper party under § 725.360 must be dismissed, unless the party at issue is a mine operator that has been designated as the operator responsible for a claimant's benefits. *Id.* If the mine operator has been designated responsible, it may be dismissed with consent of the DOL. *Id.* Plaintiffs object to the DOL placing restrictions on an ALJ's discretion.

Section 7(c) of the APA provides that, "[s]ubject to published rules of the agency and within its powers," 5 U.S.C. § 556(d), ALJs have the power to, among other things, "dispose of procedural requests or similar matters," 5 U.S.C. § 556(c)(9), "make or recommend decisions," 5 U.S.C. § 556(c)(10), and "take other action authorized by agency rule." 5 U.S.C. § 556(c)(11). Section 19 of the Longshore Act provides that, "in accordance with regulations prescribed by the Secretary," the ALJ may "hear and determine all questions" regarding a claim for benefits. 33 U.S.C. § 919(a). Under both statutory schemes, the DOL is authorized to promulgate regulations determining when parties may be dismissed from hearings for black lung benefits.

### C. *Violations of the BLBA and the Longshore Act*

Plaintiffs claim Congress did not grant the DOL authority to promulgate several of the regulations. Plaintiffs argue that 30 U.S.C. § 902(f) is the exclusive source for the DOL's medical standard setting authority and that the revised medical eligibility criteria are beyond the scope of this authority. Specifically, plaintiffs contend that Congress did not authorize the DOL

to define pneumoconiosis, to expand the scope of medical benefits, or to define the criteria for entitlement in claims filed by survivors.

However, Congress granted the DOL broad regulatory authority "to issue such regulations as [it] deems appropriate" to carry out the provisions of the BLBA, 30 U.S.C. § 936(a), to deviate from the incorporated provisions of the Longshore Act as appropriate, 30 U.S.C. § 932(a), and to prescribe "such additional provisions" as "necessary" for "the payment of benefits." *Id.* Congress has delegated expansive powers to the DOL to issue regulations for the implementation and administration of the black lung program and to determine the extent to which the incorporated Longshore Act provisions should be adopted for that program. *See Harman Mining Co. v. Dir., OWCP,* 826 F.2d 1388, 1390 (4th Cir. 1987) (characterizing 30 U.S.C. §§ 932(a) and 936(a) as "a broad grant of rulemaking authority"); *Dir., OWCP v. Bivens,* 757 F.2d 781, 787 (6th Cir.1985) (legislative history shows Congressional intent to allow Secretary flexibility in administering black lung benefits program); *Dir., OWCP v. Nat'l Mines Corp.,* 554 F.2d 1267, 1274 (4th Cir.1977) (Congress intended, by means of 30 U.S.C. § 932, to authorize Secretary to depart from specific requirements of the Longshore Act in administering black lung program).

The DOL did not exceed its authority by promulgating regulations which define pneumoconiosis (§§ 718.201, 725.309, 725.701) and which prescribe characteristics that address death due to pneumoconiosis (§ 718.205(c)(5)). "[T]he identification and classification of medical eligibility criteria" under the BLBA are matters on which the courts are to defer to "the agency entrusted by Congress to make such ... determinations." *Pauley,* 501 U.S. at 697, 111 S.Ct. 2524. In this case, the agency entrusted by Congress is the DOL. Thus, the DOL is responsible for determining when it is "necessary" and "appropriate" to supplement a statutory definition by regulation. 30 U.S.C. §§ 932(a), 936(a). *Cf. Meredith v. Time Ins. Co.,* 980 F.2d 352, 357–58 (5th Cir. 1993) (concluding "Congress intended ... to delegate to the Secretary ... broad policy-making discretion in the promulgation of regulations to 'fill in the gaps' " ... so as to "clarify what otherwise would be an interpretive quagmire").

Plaintiffs concede that the DOL has authority to establish medical criteria for assessing total disability. The definition of "total disability." is closely linked to the definition of "pneumoconiosis." 30 U.S.C. § 902(f)(1). As a whole, the statutory provision does not limit the DOL's authority to define "total disability" and "pneumoconiosis." The regulations must only be consistent with the two limiting provisions in the statute, consistent with the provisions enumerated, and establish criteria "for all appropriate medical tests" in consultation with NIOSH. The DOL has satisfied this criteria.

Plaintiffs also claim the DOL exceeded its authority in defining workers' compensation law for the purposes of implementing 30 U.S.C. § 932(g) ("The amount of benefits payable ... shall be reduced ... by the amount of any compensation received under or pursuant to any Federal or State workmen's compensation law because of death or disability due to pneumoconiosis."). § 725.101(a)(31). This rule clarifies an ambiguity noted by the Third Circuit in *Director, OWCP v. E. Associated Coal Co.,* 54 F.3d 141, 148–50 (3d Cir.1995) (finding "workers' compensation law" ambiguous and inviting DOL to revise its regulation; also finding that excluding laws providing for payments funded out of general revenues would not be

"inconsistent with the statute"). The DOL has authority to clarify ambiguities through regulation. *See* 30 U.S.C. §§ 932(a), 936(a). The DOL was acting entirely within its authority.

Plaintiffs challenge revisions to §§ 725.204, 725.212(b), 725.213(c), 725.214, and 725.219. These rules change the conditions of entitlement for spouses, former spouses, parents, siblings, and children. The DOL's purpose in making these changes was to conform the rules to amendments to the SSA in 1990. Plaintiffs argue that the plain language of the BLBA prohibits these changes, because Congress did not intend to make later amendments to the SSA applicable to the BLBA. When Congress incorporated the Longshore Act into the BLBA, it explicitly provided that the Longshore Act applies "as it may be amended from time to time." 30 U.S.C. § 932(a). However, the BLBA does not include this language for the SSA. Plaintiffs argue that this means that the SSA provision is a "specific reference," and that Congress did not intend to change the BLBA every time the SSA is amended.

■ However, no one raised the argument that the incorporated SSA provision in question is a "specific reference" in the BLBA during the rulemaking process, and the DOL did not address it *sua sponte*. Plaintiffs claim that they objected to these specific provisions in their comments, pointing to the Administrative Record Doc. No. 402 at 68–70, and Doc. No. 195 at 33, 62. A review of those documents show that the DOL received some comments that were critical of the proposed changes. However, the comments submitted do not raise or mention the "specific reference" argument that plaintiffs make now. Failure to raise a particular question of statutory construction before an agency constitutes waiver of the argument in court. *See Natural Res. Def. Council*, 25 F.3d at 1073; *Ohio v. EPA*, 997 F.2d 1520, 1528 (D.C.Cir.1993). Thus, plaintiffs are precluded from making this argument now.

■ The DOL did not exceed its authority in revising §§ 725.212(b) and 725.214 to provide that each eligible surviving spouse of a deceased miner is entitled to full benefits regardless of the existence of any other entitled spouses. The BLBA requires the payment of full benefits to *any* survivor qualifying as a "widow." *See* 30 U.S.C. § 922(a)(2) ("benefits shall be paid to [a miner's] widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled."). Moreover, when Congress adopted the SSA definition of "widow" for purposes of the BLBA (*see* 30 U.S.C. § 902(e)) in 1972, the legislative history demonstrated Congress' intent to conform the BLBA definition to the SSA definition. The SSA definition conferred full benefits on each individual qualifying as a wage-earner's "widow" regardless of any other qualifying individual. *See Peabody Coal Co. v. Dir., OWCP [Ricker]*, 182 F.3d 637, 642 (8th Cir.1999) (holding 30 U.S.C. § 922(a)(2) provides full survivors' benefits to each surviving spouse); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 765 (4th Cir.1999) (concluding "Congress intended the definition of 'widow' to be the same under the [BLBA] and [the SSA])."

■ The DOL did not exceed its authority in revising § 725.213 to allow a survivor who remarries after a divorce from or after the death of a miner to reestablish entitlement if the subsequent marriage ends. *See* § 725.213(c). The language and legislative history of the BLBA support the revised rule. *See Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1267 (6th Cir.1989) (holding that Congress intended to permit resumption of eligibility for BLBA benefits for surviving spouse when subsequent marriage ends).

■ The DOL did not exceed its authority in revising § 725.219 to allow a child beneficiary who loses eligibility due to marriage to reapply for benefits if the marriage ends. § 725.219(d). The language of the BLBA supports the DOL's conclusion that a child whose marriage terminates fulfills the statutory eligibility criteria for being "unmarried." *See* 30 U.S.C. § 902(g)(1) ("The term 'child' means a child or a stepchild who is ... unmarried"). *See, generally,* 65 Fed.Reg. 79966–67, ¶ b.

■ Plaintiffs claim that the DOL exceeded its authority in revising those regulatory provisions pertaining to payment of attorney's fees; interest; additional compensation for nonpayment of benefits; witness fees; and the cost of the complete pulmonary evaluation guaranteed to every miner by the BLBA. Plaintiffs argue that in all but exceptional circumstances, not present here, attorney's fees and cost shifting lies solely within the discretion of Congress.

The BLBA incorporates fee and cost-shifting provisions from the Longshore Act. Section 28(a) of the Longshore Act provides that "there shall be awarded in addition to the award of compensation ... a reasonable attorney's fee against the employer" where two conditions are satisfied: (1) the employer "declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation," and (2) the claimant has "thereafter utilized the services of an attorney at law in the successful prosecution of his claim." 33 U.S.C. § 928(a).

Section § 725.366 provides the procedure for collecting attorney's fees which are permitted when they are "reasonably commensurate" with work performed. Revised § 725.367(a) imposes attorney fee liability (1) when an operator "fails to accept the claimant's entitlement to benefits within the 30–day period [following the issuance of a schedule for the submission of additional evidence] and is ultimately determined to be liable for benefits," and (2) where the claimant has thereafter retained an attorney to prosecute his or her claim. This is consistent with 33 U.S.C. § 928(a).

Plaintiffs claim this provision violates 33 U.S.C. § 928(a) by requiring an operator to pay attorney's fees for work done before the operator contested the claim. However 33 U.S.C. § 928(a) only specifies when an operator's liability for attorney's fees is triggered, not the extent of that liability. The Longshore Act is ambiguous as to the extent of liability, *see Clinchfield Coal Co. v. Harris,* 149 F.3d 307, 310–11 (4th Cir. 1998); *Kemp v. Newport News Shipbuilding and Dry Dock Co.,* 805 F.2d 1152, 1153 (4th Cir.1986), and the DOL may resolve ambiguity through regulation. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778.

Plaintiffs claim that, despite the Longshore Act's expectation of claimants paying attorney's fees in some circumstances, the revised rules relieve successful claimants from ever having to pay. However, the DOL explains that § 725.367(a) does not rule out the possibility that successful claimants might be responsible for paying their attorney's fees. For example, a successful claimant would pay attorney's fees if he or she retains an attorney to assist in the filing of a claim and the operator then accepts the claimant's entitlement to benefits before creating the adversarial relationship that triggers the fee-shifting provision. The rules specifically acknowledge the potential for claimant-paid fees. *See* 20 C.F.R. § 725.365.

Contrary to what plaintiffs suggest, the case law does not support their claim. In *Jackson v. Jewell Ridge Coal Corp.,* 21 Black Lung Rep. 1–27 (Ben.Rev.Bd.1997)

(3–2 decision), the board held that an employer *may* be liable for fees for legal services performed before it contests a claim. This case overruled *O'Quinn v. Pittston Co.*, 4 Black Lung Rep. 1–25 (Ben. Rev.Bd.1982) (2–1 decision), finding that an employer is not liable for attorney's fees for services performed before it contested the claim. Additionally, the Fourth Circuit has held that an employer may be liable for such fees. *See Clinchfield Coal Co.*, 149 F.3d at 311. The cases cited by plaintiffs are inapposite. *See Bethenergy Mines v. Dir., OWCP*, 854 F.2d 632, 634–38 (3d Cir.1988); *Dir., OWCP v. Poyner*, 810 F.2d 99, 101–03 (6th Cir.1987); *Dir., OWCP v. Bivens*, 757 F.2d 781 (6th Cir. 1985).

The DOL also did not violate the Longshore Act when it revised § 725.101(a)(6) to shift the cost of the pulmonary evaluation guaranteed by 30 U.S.C. § 923(b) to mine operators, and § 725.459(b) to shift witness fees associated with cross-examination to mine operators when a claimant is indigent. Plaintiffs point to § 28(d) of the Longshore Act, 33 U.S.C. § 928(d), by which an employer may be assessed the "costs, fees and mileage of necessary witnesses attending the hearing at the instance of the claimant" where an attorney's fee is awarded against an employer. However, regardless of that provision, the DOL is specifically authorized to shift the costs of developing medical evidence to the operator, pursuant to § 7(e) of the Longshore Act (33 U.S.C. § 907(e)), incorporated into the BLBA by 30 U.S.C. § 932(a). Section 7(e) provides, in pertinent part, that:

> In the event that medical questions are raised in any case, the Secretary shall have the power to cause the employee to be examined by a physician ... and to obtain from such physician a report containing his estimate of the employee's physical impairment.... *The Secretary shall have the power in [her] discretion to charge the cost of examination ... to the employer....*

33 U.S.C. § 907(e) (emphasis added). The DOL admits that it has tailored § 7(e)'s provisions to fit the black lung benefits context. However, it is within the DOL's authority to promulgate regulations it deems appropriate to carry out the BLBA, 30 U.S.C. § 932(a).

Plaintiffs point to *West Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), where the Supreme Court held that an "attorney's fee" in the context of a fee-shifting statute does not encompass the prevailing party's expert witness costs; rather, such witness costs shift only if there is "explicit statutory authority" allowing them to shift. *Id.* at 87, 111 S.Ct. 1138. Here, § 7(e) of the Longshore Act gives the DOL explicit statutory authority to shift these costs.

Plaintiffs claim the DOL violated § 14 of the Longshore Act, 33 U.S.C. § 914(f), by providing for payment of 20 % additional compensation to the claimant when a coal mine operator fails to pay benefits within 10 days of them becoming due. *See* 20 C.F.R. § 725.607. However, § 14 of the Longshore Act unambiguously provides for 20 % additional compensation whenever any amount awarded to a claimant is not timely paid. *See* 33 U.S.C. § 914(f). Nothing suggests that this provision does not apply even when coal mine operators wish to take advantage of the Trust Fund's payment authority.

Plaintiffs claim revised § 725.608 violates § 422(d) of the BLBA, 30 U.S.C. § 932(d). This rule provides a claimant is entitled to "simple annual interest" on payments due where (1) an operator fails to pay benefits that are due pursuant to § 725.502; (2) an operator is liable for payment of retroactive benefits; (3) an

operator is liable for payment of medical benefits; and (4) an operator is liable for payment of additional compensation pursuant to § 725.607 (as a result of the operator's failure to pay benefits within 10 days of such payments becoming due). *See* § 725.608(a). In addition, in any case in which an operator is liable for the payment of attorney's fees, the attorney shall be entitled to "simple annual interest" computed from the date the fee was awarded. *See* § 725.608(c). However, the BLBA expressly provides for the payment of interest on any "payment withheld pending final adjudication of liability." See 30 U.S.C. § 932(d) ("With respect to payments withheld pending final adjudication of liability ... interest shall commence to accumulate 30 days after the date of the determination that such an award should be made").

Finally, plaintiffs argue that *Peabody Coal Co. v. Blankenship*, 773 F.2d 173, 176 (7th Cir.1985), makes payment of "prejudgment" interest impermissible. However, that case only held that "interest on past due benefits accrues from the date benefits are *due*, and not from the date a claimant is eligible to receive benefits." *Id.* at 176 (emphasis in original).

### III. Count V: Arbitrary and Capricious Rules

Plaintiffs claim that several of the revised rules are arbitrary and capricious. Plaintiffs argue that the Court should not apply the standard tests prescribed by the Supreme Court and the D.C. Circuit for determining whether agency rulemaking survives arbitrary and capricious review. Plaintiffs reason that because they believe the current administration denies responsibility for the policy choices made by the past administration, the deferential standards normally applied should not be applied by the Court in this instance. This

argument is without merit. In addition, at oral argument on the pending motions, counsel for the incumbent administration made clear that it stands by the DOL's policy choices.

 The Court will follow the traditional standard of review for determining whether an agency's action is arbitrary and capricious. The agency has a duty of reasoned decisionmaking. *See e.g., Sloan v. HUD*, 231 F.3d 10 (D.C.Cir.2000); *U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 460 (D.C.Cir.2000). In reviewing agency action under the APA, the Court must apply a highly deferential standard of review and shall "not [ ] substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416, 91 S.Ct. 814. The Court must uphold a rule if the agency's reasons and policy choices "conform to 'certain minimal standards of rationality.'" *Small Refiner Lead Phase–Down Task Force*, 705 F.2d at 521 (citation omitted). Regulations are presumptively valid and plaintiffs bear a heavy burden of demonstrating their invalidity. *See Ethyl Corp.*, 541 F.2d at 34.

 Some of the regulations plaintiffs challenge involve the DOL's evaluation of scientific data. When an agency evaluates complex scientific data within the agency's technical expertise, a reviewing court "must generally be at its most deferential." *Baltimore Gas & Elec. Co.*, 462 U.S. at 103, 103 S.Ct. 2246. *See also Troy Corp.*, 120 F.3d at 283. When an agency's decision requires the exercise of technical or scientific judgment, "it is not for the judicial branch to undertake comparative evaluations of conflicting scientific evidence." *Natural Resources Defense Council, Inc.*, 824 F.2d at 1216. "[T]h[e] court must proceed with particular caution, avoiding all temptation to direct the agency in a choice between rational alternatives." *En-*

*vironmental Defense Fund, Inc. v. Costle,* 578 F.2d 337, 339 (D.C.Cir.1978).

When an agency's interpretation of a statute it is charged with implementing is at issue, the agency's interpretation is entitled to deference as long as it is a reasonable construction and not precluded by an unambiguous statutory command to the contrary. *See Chevron,* 467 U.S. at 842–45, 104 S.Ct. 2778. *See also Christensen,* 529 U.S. at 587, 120 S.Ct. 1655 ("the framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation"); *Illinois Council,* 529 U.S. at 19, 120 S.Ct. 1084. *See generally Nat'l R.R. Passenger Corp.,* 503 U.S. at 417, 112 S.Ct. 1394 ("[j]udicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well-settled principle of federal law"). For plaintiffs to prevail, their view must be "the only possible interpretation." *Regions Hosp.,* 522 U.S. at 460, 118 S.Ct. 909; *Sullivan,* 494 U.S. at 89, 110 S.Ct. 960.

Plaintiffs claim the DOL's scientific determinations are arbitrary and capricious *per se* because the DOL has no scientific expertise. Plaintiffs argue the DOL did not consult NIOSH in any meaningful way and that there is no evidence in the record that NIOSH supported the DOL's proposals. Plaintiffs also complain that the two consultants hired by the DOL were asked to simply write reports supporting the DOL's prepublication choices, rather than to evaluate competing scientific views on the record.

■ Plaintiffs' contention that the Court should reject the DOL's science choices as arbitrary and capricious *per se* because the DOL has no scientific expertise is completely without merit. When an agency acts pursuant to an express congressional delegation of rulemaking authority, it is not for the Court to make its own determination as to whether the Court believes the agency is qualified for the job that Congress entrusted it with.

The Supreme Court has indicated that the DOL's adoption of medical eligibility criteria for the black lung benefits program is entitled to great deference:

> The [BLBA] has produced a complex and highly technical regulatory program. The identification and classification of medical eligibility criteria necessarily require significant expertise, and entail the exercise of judgment grounded in policy concerns. In those circumstances, courts appropriately defer to the agency entrusted by Congress to make such policy determinations.

*Pauley,* 501 U.S. at 697, 111 S.Ct. 2524.

Congress determined that the creation of medical eligibility criteria for black lung benefits was within the DOL's expertise. It is not for the Court to decide otherwise.

■ Plaintiffs claim § 718.104(d), the treating physician rule, is arbitrary and capricious. This rule requires the ALJ to give consideration to the relationship between the miner and any treating physician whose report is in the record and states that the relationship may constitute substantial evidence in support of a decision to give the treating physician's opinion controlling weight. The rule makes this determination dependent on the nature and duration of the relationship, as well as the frequency and extent of the treatment, and requires that the opinion be credible in light of its reasoning and documentation, and the record as a whole. Plaintiffs argue this rule is not supported by scientific evidence in the record, and that comments submitted to the DOL establish that the treating physician's professional training, rather than the duration of the doctor-patient relationship, is the most important criterion. The Court finds that this is a

rule of evidence, not science, and is, thus, sufficiently supported by the record.

Plaintiffs claim § 718.201(a)(2), defining pneumoconiosis to include "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment," is arbitrary and capricious. Plaintiffs assert that this rule is unreasoned, inappropriate, and reveals an intention to discredit medical opinions that attribute miners problems to something other than coal dust exposure. Plaintiffs argue that the DOL ignored scientific evidence demonstrating that there is little possibility of developing chronic restrictive or obstructive pulmonary disease for surface miners, current miners, and others. Plaintiffs' contention is without merit.

Plaintiffs are incorrect regarding the DOL's intent. The preamble to the final rule, see 65 Fed.Reg. 79938, ¶ d ("the revised definition does not alter the former regulations' ... requirement that each miner bear the burden of proving that his obstructive lung disease did in fact arise out of his coal mine employment, and not from another source") and the plain language of § 718.201(a)(2) ("definition includes ... any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment") undermine plaintiffs' claim that the new rule was intended to connect all chronic obstructive pulmonary disease to coal mine dust exposure. All the revised rule established is that some chronic obstructive pulmonary disease may be related to coal dust exposure in some miners.

The DOL reasonably concluded that:

Just as not all smokers develop COPD and pulmonary dysfunction, pulmonary impairment is not universal in coal miners ... [and while] only a minority of miners will have significant decrements in pulmonary function ... the individual miners affected can have quite severe disease, and statistical averaging hides this effect. The amended definition clarifies that these miners have a right to prove their case with evidence of a disabling obstructive lung disease that arose out of coal mine employment.

65 Fed.Reg. 79941.

The rulemaking record supports the DOL's decision to define pneumoconiosis to include "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment," and is consistent with NIOSH's conclusions. See NIOSH's comments submitted during the rulemaking process (Admin. Record Doc. Nos. 00194, 00386). The DOL relied on studies that evaluated miners in the United States, see, e.g., 65 Fed.Reg. 79939–40, that accounted for the effects of smoking, see, e.g., 65 Fed.Reg. 79939–41, and that only included miners who were exposed to dust only after adoption of federal dust control standards, see, e.g., 65 Fed.Reg. 79940. The DOL reviewed all of the scientific evidence in the record and provided adequate reasons for adopting the proposed rule in final form. See 65 Fed.Reg. 79938–44.

The DOL did no mention every study in the record by name. However, it did adequately respond to all significant comments and important objections. This is all that the APA requires. See Public Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C.Cir.1993) ("With regard to responding to public comments, it is settled that 'the agency [is not required] to discuss every item of fact or opinion included in the submissions made to it in informal rulemaking.' ").

Plaintiffs claim § 718.201(c), which states that pneumoconiosis "is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure," is

arbitrary and capricious. Plaintiffs assert that the scientific evidence in the record does not support this rule because only complicated pneumoconiosis, the rarest form of pneumoconiosis, is latent and progressive.

In revising the definition of pneumoconiosis, the DOL consulted with NIOSH and considered all of the relevant evidence in the record. 65 Fed.Reg. 79969–71. NIOSH concluded that its "scientific analysis support[ed] the proposed definitional changes." (Admin. Record Doc. No. 00333). The DOL reached the same conclusion after considering studies documenting that: (1) some miners whose chest x-rays were negative when they left coal mine employment developed small opacities (evidencing simple pneumoconiosis) and/or large opacities (evidencing progressive massive fibrosis or complicated pneumoconiosis) within four years thereafter (65 Fed.Reg. 79970); (2) 7.97% of a group of 138 miners whose chest x-rays were negative for simple pneumoconiosis two years after leaving coal mining had positive x-rays (for either simple or complicated pneumoconiosis) ten years later (id.); (3) miners' exposure to quartz admixed with coal dust contributed to the development of pneumoconiosis with the characteristics of silicosis in an aggressively progressive form (id.); and (4) a deterioration in both smoking and nonsmoking miners' pulmonary function continued even after retirement from mining. 65 Fed. Reg. 79971. Plaintiffs have not stated any compelling reason why these studies are not sufficient to support the rule.

Instead, plaintiffs point to evidence they believe weighs against the rule. However, the DOL reviewed all the evidence plaintiffs identified and provided a rational explanation for why that evidence was rejected. 65 Fed.Reg. 79969–70. The DOL's determinations are not arbitrary or capricious.

Given the DOL's finding that pneumoconiosis is a latent and progressive disease, revised § 725.309(d), which provides for the filing of a claim for benefits after a previous claim has been denied, is not arbitrary and capricious. Under this rule, a claimant may not collaterally attack the correctness of a decision denying benefits in an earlier claim. To prevail on a subsequent claim, the claimant must demonstrate that a condition of entitlement has changed since the denial of the prior claim. All the rule does is give claimants an opportunity to prove a change in a condition of entitlement.

Plaintiffs claim § 718.204(a), which provides that "any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis," is arbitrary and capricious. Plaintiffs assert that this rule excludes highly relevant medical evidence.

The DOL disagrees with plaintiffs' interpretation of the rule. According to the DOL, a physician is required to consider only respiratory and pulmonary conditions in determining whether a miner is "totally disabled" for purposes of the BLBA. However, a physician may inquire into all aspects of the miner's health, including nonrespiratory/pulmonary conditions, before venturing an opinion. A complete understanding of the miner's health will enable a physician to determine whether the miner has a totally disabling respiratory or pulmonary impairment caused by pneumoconiosis. The Court must afford an agency deference in interpreting the meaning of its own regulations. Thus, the Court finds that this rule does not lead to the exclusion

of highly relevant evidence as plaintiffs suggest.

Plaintiffs claim that the following evidentiary limitations are arbitrary and capricious and unsupported by the record: (1) § 725.414, with respect to the initial adjudication of benefits claims; (2) § 725.310(a), with respect to requests for reconsideration of an award or denial of benefits; and (3) §§ 725.456–458, with respect to claims pending before an ALJ.

The DOL promulgated these rules in response to evidence that black lung adjudications may be influenced by the vastly different resources available to most coal mine operators as opposed to claimants. The DOL hoped to level the playing field by correcting an imbalance in the documentary medical evidence used to adjudicate black lung benefits cases. During rulemaking, the DOL received comments and testimony from coal miners and advocates for coal miners attesting to this problem, *See, e.g.,* (Admin. Record Doc. No. 00167 at 10); *see also* (Admin. Record Doc. No. 00229). The DOL has recognized that there us substantial concern over this problem. *See Woodward v. Dir., OWCP,* 991 F.2d 314, 321 (6th Cir.1993); Timothy Cogan, *Is the Doctor Hostile? Obstructive Impairments and the Hostility Rule in Federal Black Lung Claims,* 97 W. Va. L.Rev. 1003, 1004 n. 3 (1995). *See also* 139 Cong. Rec. S16944 (daily ed. Nov. 22, 1993) (statement of Sen. Simon).

While the rules limit documentary medical evidence, the DOL incorporated a "good cause" exception, *see* 20 C.F.R. § 725.456(b)(1), as a procedural safeguard for cases where the ALJ needs additional evidence to make an adequate determination of the claimant's eligibility. The APA provides that "the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or *unduly repetitious evidence,*" 5 U.S.C. § 556(d) (emphasis added). This is what the DOL has done. The Court finds, especially in light of the safeguard, that this rule is reasonable.

Plaintiffs claim §§ 725.408, 725.495, 725.465 are arbitrary and capricious. Plaintiffs argue that these rules excuse the DOL from its normal burdens of proof. Section 725.408(a)(3) requires that mine operators respond to a claim within a fixed amount of time. This rule does not shift the burden of proving non-liability to the operator. It does require operators to assume the burden of responding to the District Director's notification under § 725.407, and the burden of submitting evidence that supports their response within a certain time frame. Neither of these burdens constitutes a burden of proof.

Section 725.495(b) makes clear that the DOL bears the ultimate burden of persuading the factfinder that the operator designated as responsible by the District Director is a potentially liable operator, *i.e.,* that it meets the conditions set forth in § 725.494. There are two exceptions: (1) the operator designated as responsible is presumed to be financially capable of assuming liability (§ 725.495(d)); and (2) the DOL is relieved of this obligation if the operator designated as responsible fails to respond to the District Director's notification of a claim (§ 725.408(a)(3)). Thus, the only burden placed on the operator is to the District Director's notification. If the operator denies one or more of the assertions listed in § 725.408(a)(2) (corresponding to the requirements in § 725.494), the DOL retains the burden of proving those assertions even if the operator fails to submit documentary evidence to support its denial. This rule is not arbitrary and capricious.

Section 725.495 sets forth the criteria for determining the responsible operator.

The revised rule addresses a regulatory void identified by the Fourth Circuit in *Director, OWCP v. Trace Fork Coal Co.,* 67 F.3d 503 (4th Cir.1995). In *Trace Fork Coal,* the court noted that "[t]he Black Lung Benefits Act and its accompanying regulations do not specifically address who has the burden of proving the responsible operator issue." *Id.* at 507. The revised rule specifically assigns various burdens of persuasion. The OWCP Director, as the representative of the Trust Fund, bears the burden of establishing that the operator designated by the District Director meets all of the conditions of a potentially liable operator (set forth in § 725.494). *See* § 725.495(b). If the designated responsible operator is not the operator that most recently employed the miner, the OWCP Director bears the burden of establishing that the OWCP has searched its records and found no proof that a more recent operator/employer was either approved to self-insure its liability for benefits or had purchased commercial insurance that would cover benefits payable to the miner. *See* § 725.495(d). The designated responsible operator bears the burden of establishing either that it does not possess sufficient assets to secure the payment of benefits or that a more recent employer has sufficient financial assets to assume liability. *See* § 725.495(c). This assignment of burdens is not unreasonable.

Section 725.465(b) provides that an ALJ may dismiss the operator designated as the responsible operator by the District Director only when the District Director agrees to such a dismissal. This rule does not prohibit an ALJ from fully adjudicating all of the matters before him or her. One of the issues for adjudication before an ALJ is whether the coal mine operator designated as responsible by the District Director meets the conditions set forth in § 725.495. If it does, that coal mine operator is liable for any benefits payable to the

miner. If it does not, the ALJ may not remand the case to allow the District Director to name another responsible operator, but must assign potential liability to the Trust Fund. The new rule prohibits only the dismissal of a designated responsible operator pending appeal. It does not prevent the ALJ from adjudicating the responsible operator issue and concluding that the designated operator was incorrectly named.

The DOL argues that the new rule addresses the problem that occurs if an ALJ dismisses a potentially responsible operator before the ALJ determines the merits of the claim. *See* 65 Fed.Reg. 80004–05. The DOL observed that it was difficult to appeal such a dismissal to the Benefits Review Board, and nearly impossible to petition for review of such a dismissal by a federal appellate court. The alternative, waiting until the ALJ issues his merits decision before appealing to the Board, is also problematic, because the Board's previous rulings suggest that it will not permit the DOL to seek reinstatement of the dismissed operator if a claimant is then required to readjudicate his entitlement. *See* 65 Fed.Reg. 80004. In either case, liability for the claim would rest with the Trust Fund even though the ALJ's determination of the responsible operator issue may have been erroneous. Accordingly, the DOL determined that an operator has no right to dismissal before the conclusion of proceedings. This rule is reasonable.

Plaintiffs claim §§ 725.502, 725.503, 725.530, and 725.607, suffer from an absence of legal authority and are arbitrary and capricious. Sections 725.502 and 725.503 provide for when benefit payments are due and when eligibility for benefits commences. Section 525.502 provides that benefits are due when an order requiring payment is issued by the District Director. Section 502.503 requires that for each min-

er's claim, the ALJ must attempt to determine whether the evidence identifies the month/year in which the miner became totally disabled due to pneumoconiosis. If the evidence is inconclusive, the ALJ resorts to the "default" onset date based on the month/year in which the miner filed his or her claim for benefits. The ALJ must still determine whether the actual onset date can be identified. The default date is based on the rational assumption that the miner filed the claim when he considered himself entitled to benefits. These rules are reasonable.

Sections 725.530 and 725.607 provide that a claimant is entitled to 20 % additional compensation if he or she does not receive benefits within 10 days of the benefits becoming due. Requiring an operator to pay additional compensation when it has not complied with the terms of an effective award is a rational method of protecting the Trust Fund, *see* 65 Fed. Reg. 80009–80011, and encouraging employers to timely comply with compensation orders, *see Providence Washington Ins. Co. v. Dir., OWCP,* 765 F.2d 1381, 1384 (9th Cir.1985) ("The [Longshore Act] is explicitly designed to encourage the prompt payment by employers of obligations under a compensation order notwithstanding the existence of an appeal."). These rules are neither arbitrary nor capricious.

Plaintiffs claim §§ 725.493(a) and 726.8(d) should be vacated because they are too broad to accomplish the DOL's efforts to limit the defenses of operators that illegally attempt to avoid liability. Plaintiffs argue that these rules are problematic because they impose liability in a way that is inimical to employee leasing arrangements. Sections 725.493(a) and 726.8(d) define "employ" and "employment" to include any relationship "under which an operator retains the right to di-

rect, control, or supervise the work performed by a miner, or any other relationship under which an operator derives a benefit from the work performed by a miner." The rules do not prohibit the use of leased employees at coal extraction sites, nor do they provide that the mine operator, as opposed to the labor contractor, will necessarily be liable for any black lung benefits due. If a contractor provides labor to a coal mine operator through a leasing agreement and pays the leased employees' wages, the arrangement constitutes prima facie evidence of an employment relationship between the contractor and the leased employee. *See* § 725.493(a)(1)-(2). The contractor may be held liable as a responsible operator, provided it is capable of assuming its liability for the payment of benefits, *see* §§ 725.494(e), 725.495(a)(1), and the other regulatory requirements for that status are met. The DOL has simply put all coal extraction site operators and contractors providing leased labor on notice that, depending on the specific facts present in a claim, either may be held liable for a leased employee's black lung benefits. There is nothing unreasonable about these rules.

Plaintiffs claim § 725.701 has no support in the record. Section 725.701(e) creates a rebuttable presumption that any pulmonary disorder for which an entitled miner receives treatment is a disorder caused or aggravated by a miner's pneumoconiosis. The presumption codified in this rule originally was created by the Fourth Circuit in *Doris Coal Co. v. Dir., OWCP,* 938 F.2d 492, 496–97 (4th Cir.1991), and was refined by subsequent case law. *See Gulf & Western Indus.,* 176 F.3d at 233; *General Trucking Corp. v. Salyers,* 175 F.3d 322, 324 (4th Cir.1999). The DOL was persuaded by the Fourth Circuit's rationale. That rational, common-sense connection, supports this permissible presumption.

*See Garvey*, 190 F.3d at 579 (upholding a presumption as "common-sense"); *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1101 (D.C.Cir.1998) (presumption permissible if rational, even if not supported by an evidentiary showing).

The Court agrees with the DOL that the presumption makes practical sense. As the DOL noted,

> [I]t receives 12,000 to 15,000 medical bills per week, most of which are for relatively small amounts, $25.00 to $75.00. The Department must process these claims in a cost effective and prompt manner. The Department believes that it would be unreasonable to require miners to prove that each treatment expense is for pneumoconiosis when: (1) Each miner has already proven that he is totally disabled by pneumoconiosis arising out of coal mine employment; (2) the bills are for treatment of a pulmonary disorder; and (3) the bills are generally for relatively small amounts.

64 Fed.Reg. 55004. The DOL's conclusion that it would be most efficient to presume the relationship in all cases, subject to rebuttal by the liable party, is not irrational.

Plaintiffs attach importance to a report from a physician who holds the view that patients with pneumoconiosis often have cigarette-induced lung disease or asthma. This testimony is irrelevant to the claims of miners totally disabled by pneumoconiosis who do not have cigarette-induced lung disease or asthma. The DOL considered this evidence and decided to allow the employer to rebut the presumption with credible evidence in those cases where the miner's pulmonary treatment was necessitated by a condition other than his totally disabling pneumoconiosis. This choice is rational.

Plaintiffs claim § 718.205(c) is arbitrary and capricious. Section 718.205(c), the "hastening death" rule, states that "[p]neumoconiosis is a 'substantially contributing cause' of a miner's death if it hastens the miner's death." § 718.205(c)(5). This rule reflects the DOL's longstanding position on this issue which has been upheld by six courts of appeals. *See* 65 Fed.Reg. 79949 (compilation of cases). In addition, the administrative record supports this rule. *See* 65 Fed.Reg. 79950–51, ¶ (f).

Plaintiffs claim the rulemaking record lacks valid scientific support establishing a connection between a miner's death from nonrespiratory causes and pneumoconiosis. The DOL addressed this position in the preamble to the final rules, in addition to the medical evidence cited by plaintiffs. *See* 65 Fed.Reg. 79950, ¶ (f)(i) (summarizing comments of Drs. Branscomb, Bailey and Fino). The DOL found plaintiffs' medical evidence unpersuasive, because it concentrated on "clinical" pneumoconiosis, as narrowly defined by the medical community, rather than the disease as it is broadly defined by the BLBA. 65 Fed.Reg. 79951, ¶ (f)(iii). Even plaintiffs' evidence did not completely rule out a nexus between pneumoconiosis and nonrespiratory deaths. *Id.* The DOL concluded: "Even though nonrespiratory deaths hastened by pneumoconiosis may occur relatively infrequently, the survivor should nevertheless be given the opportunity to prove that pneumoconiosis had a tangible impact on the miner's death in those instances." *Id.* This is a rational approach.

Plaintiffs claim the DOL failed to adequately explain revisions made to subsection (d) of § 718.205. The DOL made two changes to § 718.205(d) from the prior regulation: (i) cross-references to §§ 718.307 and 718.403 were deleted because both of these rules were repealed; and (ii) cross-references to §§ 725.412–

725.415 were changed to reflect renumbered and amended regulations governing evidentiary development. Throughout the rulemaking proceedings, the DOL identified § 718.205 as one of the regulations for which changes were proposed and comments invited. *See* 62 Fed.Reg. 3340; 64 Fed.Reg. 54970. The DOL received no comments concerning § 718.205(d). *See* 64 Fed.Reg. 54980; 65 Fed.Reg. 79949–51. Thus, plaintiffs have waived any challenge to the revisions to this subsection. *Natural Res. Def. Council,* 25 F.3d at 1073. Nonetheless, no explanation was necessary because the DOL did not substantively change either the meaning or the application of the rule. This rule is not arbitrary or capricious.

Plaintiffs also claim that the DOL's failure to revise several of its rules was arbitrary and capricious. Plaintiffs once again contend that the DOL should not receive the substantial deference customarily afforded to an agency because the decision not to revise the rules was not made by the incumbent administration. This assertion is without merit.

■■■■■ The degree of deference due a decision not to issue a rule after conducting a rulemaking "while not 'extreme,' is 'very substantial.'" *Consumer Fed'n v. Consumer Product Safety Comm'n,* 990 F.2d 1298, 1305 (D.C.Cir.1993). Where a plaintiff challenges an agency's decision not to engage in rulemaking in response to a petition to amend an existing rule, the deference due the agency is even greater. *See, e.g., ITT World Communications, Inc. v. FCC,* 699 F.2d 1219, 1245–46 (D.C.Cir. 1983), rev'd on other grounds, 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) ("It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking.").

Plaintiffs claim the DOL's decision not to remove the term "anthracosis" from the regulatory definition of clinical pneumoconiosis, § 718.201(a)(1), was arbitrary and capricious. Plaintiffs argue that "anthracosis," as understood in the medical community, means merely black or brown pigmentation of the lung, not a disease process appropriately included within the definition of pneumoconiosis. However, this concern was addressed by the DOL when it revised § 718.202(a)(2) (governing proof of pneumoconiosis by pathology evidence) to explicitly provide that "[a] finding in an autopsy or biopsy of anthracotic pigmentation ... shall not be sufficient, by itself, to establish the existence of pneumoconiosis." § 718.202(a)(2). Pursuant to this revision, a party opposing entitlement need only ask a physician to describe what he or she sees on examination of the lung tissue; if the description shows pigmentation alone, that evidence is insufficient to meet the regulatory requirements for proving pneumoconiosis. Accordingly, the DOL did not act irrationally in refusing to strike the term "anthracosis" from § 718.201. *Cf. Nat'l Mining Ass'n v. MSHA,* 116 F.3d 520, 549 (D.C.Cir.1997) (quoting *Personal Watercraft Indus. Ass'n v. Dep't of Commerce,* 48 F.3d 540, 544 (D.C.Cir.1995)) (regulations " 'are not arbitrary just because they fail to regulate everything that could be thought to pose any sort of problem.' ")

Plaintiffs claim the DOL's decision not to revise § 718.202(a)(2) so as to adopt the "Kleinerman criteria" for invoking the irrebuttable presumption of total disability under § 718.304, was arbitrary and capricious. Revised section 718.202(a)(2) provides that a finding of pneumoconiosis may be based on "[a] biopsy or autopsy conducted and reported in compliance with § 718.106 [which sets quality standards for pathology reports]" but that "[a] finding in an autopsy or biopsy of anthracotic pig-

mentation ... shall not be sufficient, by itself, to establish the existence of pneumoconiosis." § 718.202(a)(2). However, biopsy or autopsy evidence demonstrating that the miner suffers or suffered from an advanced form of pneumoconiosis ("complicated" pneumoconiosis) may be sufficient to invoke an irrebutable presumption that the miner is totally disabled or died due to pneumoconiosis. *See* 30 U.S.C. § 911(c)(3), as implemented by § 718.304.

During rulemaking, the DOL received several comments urging it to adopt the standards for diagnosing "complicated" pneumoconiosis by autopsy or biopsy generated by the College of American Pathologists as set forth in Kleinerman *et al, Pathology Standards for Coal Workers' Pneumoconiosis,* Archives of Pathology and Laboratory Medicine (July 1979). Those standards require the presence of at least a two-centimeter lesion in the lung for a diagnosis of complicated pneumoconiosis to be made. The DOL declined to adopt a specific lesion size standard. The record lacked evidence of a consensus within the medical community on a particular standard or that the Kleinerman article reflects a universal or prevailing standard. Other comments received by the DOL refuted the existence of a consensus. *See* 65 Fed.Reg. 79936. Even the Kleinerman article acknowledges that consensus among the medical community is lacking. *See Pathology Standards for Coal Workers' Pneumoconiosis* (acknowledging that the two-centimeter standard it chose was an "arbitrary" one and that other experts in the medical community have elected to use one-centimeter or three-centimeter standards). The DOL's decision not to adopt the Kleinerman standard for evaluating pathology evidence was neither arbitrary nor capricious.

Plaintiffs claim the DOL's decision not to revise the criteria for disability for older miners was arbitrary and capricious. The pulmonary function tables (contained in Appendix B to 20 C.F.R. Part 718) provide standards for persons over age 72. Under § 718.204(b)(2)(i), a miner can establish the existence of a totally disabling respiratory or pulmonary impairment by means of a pulmonary function study, which is a clinical test designed to measure an individual's breathing capacity. A pulmonary function study is considered sufficient to prove a miner is totally disabled if it shows that the amount of air the miner can exhale meets or falls below the values specified in the pulmonary function tables contained in Appendix B to Part 718. *See* § 718.204(b)(2)(i)(A)-(C).

During rulemaking, the DOL received some comments urging it to liberalize the standards for disability. *See* (Admin. Record Doc. Nos. 00076, 00891). The DOL concluded that none of the comments provided sufficient medical evidence to support any of the proposed changes. *See* 65 Fed.Reg. 79953, ¶ (c). The DOL's decision not to amend the pulmonary function tables was reasonable.

Plaintiffs claim that the rulemaking record contains uncontradicted medical evidence linking the effects of aging (rather than occupational respiratory disease) to diminishing pulmonary function capacity is unavailing. The evidence plaintiffs cite provides no basis for their contention that the pulmonary function tables lack standards past the age of 71. *See* (Admin. Record Doc. No. 00195). While this evidence supports the general idea that a correlation exists between aging and deteriorating pulmonary function status, the statistical data cited goes no further than age 65. *Id.*

Plaintiffs claim that the DOL's decision not to revise the fee-shifting provisions §§ 725.365–725.367 in the manner plaintiffs desire was arbitrary and capricious.

The DOL's refusal to engage in rulemaking with respect to §§ 725.365–725.367 was reasonable given the magnitude of issues it was already attempting to address, and the fact that the issues raised by plaintiffs can be resolved through adjudication as §§ 725.365–725.367 are applied.

## IV. Count VI: 5 U.S.C. § 559

 Plaintiffs claim that a number of the revised regulations treat claimants and employers unequally in violation of the APA. 5 U.S.C. § 559. Plaintiffs argue that the revised rules permit claimants to submit more evidence than defendants, only screen nonconforming proof submitted on behalf of the claimants for compliance with the DOL's quality control criteria, and mandate that proof submitted by claimants is entitled to enhanced weight.

However, as defendants point out, 5 U.S.C. § 559 does not apply to black lung adjudications except to the extent that it is expressly incorporated into the BLBA. 30 U.S.C. § 956. The only adjudicatory sections of the APA that are incorporated by reference into the BLBA—via 30 U.S.C. § 932(a) and 33 U.S.C. § 919(d)—are 5 U.S.C. §§ 554, 556–557. However, even if 5 U.S.C. § 559 was incorporated, it would be inapplicable to the extent that it is inconsistent with regulations promulgated by the DOL. *See* 30 U.S.C. § 932(a). Thus, there is no basis for striking down any regulation on "equal treatment" grounds.

## V. Count VII: Inadequacy of the Rule-making Record

Plaintiffs challenge the adequacy of the DOL's rulemaking proceeding because, plaintiffs allege, the DOL failed to submit the entire record for public comment.

More specifically, plaintiffs complain that the consultants hired by the DOL relied on studies that were not part of the public record.

Defendants assert that the complained-of reports (Admin Record Doc. Nos. 01017, 01019, 01025, 01026) were prepared by two physicians to assist the DOL in evaluating medical issues related to the proposed rules. One report (Admin. Record Doc. No. 01016) was prepared by an economist to assist the DOL in preparing the small business impact analysis that it was required to publish with the final regulations pursuant to the Regulatory Flexibility Act, 5 U.S.C. §§ 601–609. Defendants argue that the use of expert consultant reports like these does not violate the rulemaking procedural requirements of either the APA or the Regulatory Flexibility Act.

 The procedural requirements for the promulgation of regulations under the APA are clear.[9] An agency is first required to publish in the Federal Register a "[g]eneral notice of proposed rule making." 5 U.S.C. § 553(b). It is then required to "give interested persons an opportunity to participate in the rule making through the submission of written data, views, or arguments with or without an opportunity for oral presentation." 5 U.S.C. § 553(c). "After consideration of the relevant matter presented," the agency must "incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.* Evidentiary-type hearings are not required for informal rulemaking. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543–48, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

---

9. The procedural rulemaking requirements of the APA are incorporated in the BLBA by 30 U.S.C. § 936(a).

■ It is well settled that "in the informal rulemaking context private technical consultants may assist the agency in analyzing record data without running afoul" of the APA's procedural requirements. *Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442, 1449 (D.C.Cir. 1984). "Because such consultants operate as the functional equivalent of regular staff, they constitute agency insiders" and therefore "no improper contact between administrative personnel and outside parties ever arises." *Id.*

In *United Steelworkers of America v. Marshall*, 647 F.2d 1189 (D.C.Cir.1980), the D.C. Circuit rejected an objection to the use of consultants' reports similar to the one urged by plaintiffs here. In that case, the plaintiff complained that, "[a]fter closing the record," the DOL "sought help from outside consultants in reviewing the record and preparing the Preamble" for new workplace-safety regulations. *Id.* at 1217. The court held that the plaintiff could not show that it had been "prejudiced" by not having an opportunity to comment on the reports, because the plaintiff failed to establish that (a) the consultants' reports contained "any hard data or new legal arguments" which had not previously been made available for comment in the notice of proposed rulemaking, and (b) the DOL had "demonstrably relied" on this new information "in setting the standard" to which the plaintiff objected. *Id.* at 1218. "[T]he communications between the agency and the consultants were simply part of the deliberative process of drawing conclusions from the public record." *Id.*

The same is true here. The DOL prepared a list of the medical and scientific documents contained in the rulemaking record for its consultants to consider, noting "[o]ur response to comments submitted by parties is limited to these documents or documents ... referenced in these documents." (Admin. Record Doc. No. 01065). The DOL admits that two reports discuss scientific studies that were not cited or referenced in the rule making record. *See, e.g.,* (Admin. Record Doc. Nos. 01017 and 01019). However, those studies were cumulative in nature, and confirm other studies that were disclosed for public comment, 62 Fed.Reg. 3343–44, 64 Fed. Reg. 54978–79. In the preamble to the final regulations, the DOL relied only on studies disclosed in the rulemaking record. 65 Fed.Reg. 79942–43. Plaintiffs were not prejudiced in the manner required by this Circuit to maintain a challenge to the use of non-public consultants' reports. *United Steelworkers*, 647 F.2d at 1218.

■ Informal rulemaking "does not contemplate a closed record" and "the government is entitled to rely on information not exposed to comment so long as it is supplementary." *Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 912 n. 1 (D.C.Cir. 1999). *See also Air Transport Ass'n v. FAA*, 169 F.3d 1, 7 (D.C.Cir.1999); *Solite Corp. v. EPA*, 952 F.2d 473, 485 (D.C.Cir. 1991); *Building Indus. of Superior California v. Babbitt*, 979 F.Supp. 893, 902–03 (D.D.C.1997). Here, the DOL did not change its position from the notice of proposed rulemaking to the final rulemaking based exclusively on evidence considered by the agency that was not offered for public comment. *Air Transport Ass'n*, 169 F.3d at 7.

■ Plaintiffs also claim the DOL's use of a report by a consulting economist violated the rulemaking requirements of the Regulatory Flexibility Act. However, any use of consultants that is permissible under the APA is equally permissible under the Regulatory Flexibility Act.

## VI. Count VIII: Due Process Challenge

Plaintiffs challenge several of the revised regulations on due process grounds. Plaintiffs argue that the rules violate due process because, as plaintiffs assert, they (1) eliminate finality through the irrebuttable presumption of changed conditions in § 725.309; (2) deprive the mine operators of fair hearing rights; and (3) retroactively apply new medical criteria upsetting the contractual expectations of mine operators and their insurers without a rational basis for doing so.

A facial challenge to the constitutionality of a statute under the due process clause "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which" the challenged provision "would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). "The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid." *Rust*, 500 U.S. at 183, 111 S.Ct. 1759 (quoting *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095). In the instant case, plaintiffs fail to establish that the regulations would fail to operate constitutionally in any adjudication of black lung benefits.

Plaintiffs' argument that § 725.309 improperly upsets the finality of previously adjudicated black lung claims is meritless. This rule merely permits a claimant to assert a new claim for black lung benefits on the basis of a change in a "condition of entitlement," such as a subsequent deterioration in the health of a miner due to black lung disease. Common law notions of claim preclusion do not bar subsequent claims based on changed conditions because the claims are not the same. *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1007–1008 (7th Cir.1997); *Lovilia Coal Co. v. Harvey*, 109 F.3d at 450 (8th Cir.1997); *Wyoming Fuel Co. v. Dir., OWCP*, 90 F.3d 1502, 1510 (10th Cir.1996); *Lisa Lee Mines v. Dir., OWCP*, 86 F.3d 1358, 1362 (4th Cir.1996); *Labelle Processing Co.*, 72 F.3d at 314 (3rd Cir.1995); *Sharondale Corp. v. Ross*, 42 F.3d 993, 998 (6th Cir. 1994).

Plaintiffs' argument that some of the regulations limiting evidentiary submissions violate due process because "they give the impression of having been created by an old fashioned totalitarian state to give the illusion that citizens have a right to be heard," is also without merit. These regulations do not deprive mine operators of a meaningful opportunity to be heard.

Finally, plaintiffs' argument that retroactive application of the rules denies the mine operators due process is without merit because the rules are not impermissively retroactive.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' Motion for Summary Judgment is **DENIED.** It is

**FURTHER ORDERED** that defendants' Motion to Dismiss is **DENIED.** It is

**FURTHER ORDERED** that defendants' Motion for Summary Judgment is **GRANTED.** It is

**FURTHER ORDERED** that intervenors' Motion for Summary Judgment is **GRANTED.** It is

**FURTHER ORDERED** that the Preliminary Injunction Order issued by the Court on February 9, 2001 is dissolved. It is

**FURTHER ORDERED** that defendants' and intervenors' Motion to Strike

Plaintiffs' Affidavits is **GRANTED.** The Court will not consider evidence outside the administrative record. It is

**FURTHER ORDERED** that plaintiffs' Motion to Vacate and Remand is **DENIED.** It is

**FURTHER ORDERED** that, in light of plaintiffs' voluntary dismissal of certain claims, the Coal Mine Compensation Rating Bureau of Pennsylvania's Motion to Appear as Amicus Curiae is **DENIED.**

**IT IS SO ORDERED.**